## Case No. 1,562.

### In re BLOSS.

[4 N. B. R. 147 (Quarto, 37).][1]

Circuit Court, D. Michigan. 1870.

BANKRUPTCY—SECURED DEBT — WAIVER OF SECURITY—PETITION FOR INJUNCTION — SUFFICIENCY OF ALLEGATIONS — RESTRAINING SALE OF REALTY—GROUNDS FOR.

1. Where a petition was filed, and an injunction allowed against C. E. B., a son of the bankrupt, to restrain the sale of certain real estate, etc., and C. E. B. moves to dissolve the injunction on affidavit of himself and the bankrupt, denying the collusion and connivance charged in the petition, *Held*, a secured debt is provable within the meaning of section 39 of the bankrupt act.

[Cited in Re Stansell, Case No. 13,293; Re Parkes, Id. 10,754; Re Hyndman, 5 Fed. 709; Re Baxter, 12 Fed. 75.]

2. That a creditor who has a lien upon the property of his debtors by virtue of a judgment, etc., filing a petition for adjudication of bankruptcy without reference to such lien, thereby waives and relinquishes the same, and stands before the court as an unsecured creditor.

[Cited in Re Hope Mining Co., Case No. 6,681; Re Stansell, Id. 13.293; Re Jaycox, Id. 7,-242; Re McConnell, Id. 8,712; Re Broich, Id. 1,921.]

[See Ex parte Alexander, Case No. 161.]

3. Allegations upon information · and belief merely, unsupported by other proof, are not sufficient to sustain an injunction.

4. C. E. B. had probable cause to believe that J. B. B., the alleged bankrupt, was insolvent, and that he suffered the said C. E. B. to obtain judgment, execution, and levy, with intent to give him a preference in violation of the bankrupt act, and that therefore the injunction issued in this case ought to be retained and continued till the further order of the court. Motion to dissolve denied.

In bankruptcy. On filing the petition of adjudication of bankruptcy, a petition was filed and an injunction was allowed against one Charles E. Bloss, a son of the alleged bankrupt, to restrain the sale of certain real estate upon an execution in favor of the said Charles E., and against the said alleged bankrupt, issued from the circuit court for Wayne county, for the reason, as alleged in said petition, that the judgment upon which the execution issued was obtained by collusion and connivance with the said alleged bankrupt, and for the purpose of preventing the petitioning creditor from collecting his claim. Charles E. Bloss now moves to dissolve the injunction, which motion is founded on affidavit of himself and the said alleged bankrupt, denying the collusion and connivance, and the fraudulent purpose charged in the petition. On the hearing of the motion, counsel for the petitioning creditors offered counter-affidavits, which were objected to, but the affidavits were received subject to the objection. It appears, from the affidavits, that the claim of the petitioning creditor was also in judgment in the Wayne circuit court, and that he had garnished a claim of the alleged bankrupt against the Detroit and Milwaukee Railway Company, and had also levied an execution upon the same real estate, but subsequent to the levy in favor of the said Charles E. Bloss. It is contended, as an additional ground for dissolving the injunction, that the claim of the petitioning creditor being a second claim, it was not provable under the bankrupt law, and therefore he could not file the petition for adjudication of bankruptcy.

Mr. Dickinson and Mr. Russell, for the motion.

Wilkison & Post, for petitioning creditors.

LONGYEAR, District Judge. First. As to receiving counter-affidavits on a motion to dissolve an injunction, the authorities are by no means uniform. In bankruptcy cases, where there are generally interests of creditors involved other than those immediately

---

[1] [Reprinted by permission.]

before the court, there are strong reasons for adopting the more liberal rule, and allowing counter-affidavits to be read, so that the court may be possessed of all facts bearing upon the question, and thereby enabled to protect the interests of all parties concerned. The objection to receiving the counter-affidavits is therefore overruled.

Second. By section 39 of the bankrupt act, a petitioning creditor for adjudication of bankruptcy, must be one whose debt is provable under the act. By section 20 it is clearly contemplated that a secured creditor may prove his debt. It is true he cannot be admitted as a creditor only for the balance of his debt after deducting the value of the property upon which he has a lien, unless he releases or conveys his security to the assignee, in which case he may be admitted as a creditor for his whole debt; yet his debt is nevertheless provable within the meaning of the act, before such balance is ascertained or such release or conveyance is made. It does not follow that because he cannot be admitted as a creditor, he therefore cannot prove his debt. On the contrary, the proving of his debt is a necessary preliminary step to his eventually being admitted as a creditor. See Davis v. Carpenter [Case No. 3,618]; In re Ruehle [Id. 12,-113]; In re Winn [Id. 17,876]; In re Bigelow [Id. 1,396]. It is said, however, that the conditions upon which a second creditor can be admitted as a creditor, depend upon an assignee being first appointed, through whom those conditions can be complied with (section 20); and therefore he cannot vote for assignee at the first meeting of creditors. This is, no doubt, correct; but it does not follow that the proceedings must therefore fail; because, 1st, there may be other creditors who can vote; and, 2d, if there are none, then a condition of things exists which is provided for by section 13 of the act, in which the judge, or, if there be no opposing interest, the register, is required to appoint an assignee. In re Cogswell [Id. 2,959]; Anon. [Id. 457].

I have thus far considered this question as though the debt was set up in the petition as a secured debt. But such is not the case. The petition for adjudication of bankruptcy, and the proof of claim accompanying it, is without reference to any lien or security whatever; and it has been held, I think correctly, that where a creditor proves his full claim without reference to his lien or security, and without apprising the bankrupt court of its existence, such an act is a waiver of the lien and relinquishment of the security, and such creditor will be ordered to release the same to the assignee. Stewart v. Isidor [5 Abb. Pr. (N. S.) 68,] and the numerous cases, English and American, there cited. The lien or security in this case was by judgment and execution, and it is expressly provided by section 21 of the act that all unsatisfied judgments which may have been previously obtained upon one debt proven in the bankruptcy proceedings shall be deemed to be discharged and surrendered. It is true these decisions and section 21 have reference to debts proven in the course of the proceedings after they have been commenced, but they certainly apply with as great, if not with greater force, to a creditor proving his claim for the purpose of commencing proceedings.

I hold, therefore, upon this point: First. That a secured debt is provable within the meaning of section 39 of the bankrupt act, so as to entitle a creditor holding such debt to file a petition for adjudication of bankruptcy under said section.

Second. That a creditor who has a lien upon the property of his debtors, by virtue of a judgment, execution, and levy, or as secured by garnishment, filing a petition for adjudication of bankruptcy without reference to such lien or security, thereby waives and relinquishes the same, and stands before the court as an unsecured creditor.

Third. The grounds for injunction are alleged in the petition on information and belief merely, and the petition was not accompanied by affidavits sustaining the allegations. Neither, in my opinion, do the affidavits and counter-affidavits read on the hearing of the motion to dissolve, sustain those allegations. If this was all, the court would not hesitate to dissolve the injunction, because allegations upon information and belief merely, unsupported by other proof, are not sufficient to sustain an injunction.

But it is contended that the affidavits read at the hearing of the motion to dissolve do show that at the time said Charles E. Bloss obtained his judgment and procured a levy of execution on the property of the said Joseph B. Bloss, he, the said Joseph B., was insolvent, and that he suffered such levy to be made with intent to give a preference to the said Charles E., and that the said Charles E. had reasonable cause to believe that the said Joseph B. was so insolvent, and that such was his intent, and that therefore the court will continue the injunction, allowing the petition to be amended, if necessary, so as to cover that ground. Such I believe to be the correct practice. Allowing that the facts appearing are such that if properly alleged they would warrant an injunction, there certainly would be nothing gained by dissolving the injunction and then re-issuing the same state of facts. It becomes important, then, to inquire into the facts as bearing upon this phase of the question.

That Joseph B. Bloss was insolvent there can be, and I believe is, no controversy. That Charles E. Bloss knew that he was so insolvent is equally clear. This appears from declarations made by him to the attorneys of the petitioning creditor during the negotiations for compromise; and all the facts

go to show that Charles E. was perfectly familiar with the pecuniary circumstances of Joseph B., whatever they were.

It is sufficient under the 39th section of the act that the alleged bankrupt suffered his property to be taken on the execution. It cannot be said that he had no alternative, because he had the alternative /to put himself into bankruptcy, and thus prevent the levy. Did he then suffer the levy to be made with intent to give a preference to Charles E.? It is said that he could not have entertained such intent, for the reason that the petitioning creditor was fully secured by his garnishment of the claim of Joseph B. against the Detroit & Milwaukee Railway Company, and that it does not appear that there were other creditors. But was this petitioning creditor so sued? It is true Joseph B. claims two thousand dollars of the company, but the company disputes his claim, and it was then, and still is, in litigation; and the evidence is clear, to my mind, that neither Charles E. nor Joseph B. expects a recovery of anything like the amount claimed, or sufficient to liquidate more than a small part of the petitioning creditor's claim. But it is said the petitioning creditor slept upon his rights, otherwise he might himself have levied upon the property afterwards levied on by Charles E. This is fully explained by the pending negotiations for compromise conducted by Charles E. on behalf of Joseph B., and the representations made by Charles E. to the attorneys of the petitioning creditor as to the worthlessness of the property over and above the incumbrances which were upon it. The effect, then, of the levy in favor of Charles E. was to give him a preference, and as every person is presumed to intend the necessary consequences of his own acts, Joseph B. must be presumed to have suffered his property to be so taken with intent to give a preference to Charles E.

We have already seen that Charles E. knew that Joseph B. was insolvent. Had Charles E. reasonable cause to believe that Joseph B. suffered him to obtain his levy with intent to give him a preference? The answer is clear and potent. Charles E. knew Joseph B.'s condition as well as he knew it himself. He was also perfectly familiar with the condition and prospects of the claim of Joseph B. against the railway company, and of course knew that the petitioning creditor was very inadequately secured thereby. It is simply preposterous to say that he had not reasonable cause to believe that Joseph B. suffered him to obtain his levy with intent to give him a preference. Why did Charles E. thus suddenly turn round and prosecute his father for monies he had, like a dutiful son, loaned him for his support and otherwise, and push his suit to judgment, execution, and levy with such expedition, if it was not to gain an advantage over the other creditors of Joseph B.? He had no difficulty with his father, but was evidently in perfect accord with him. So far as his father was concerned, it does not appear but he was willing to continue to wait for his pay. But it would not answer to let other creditors in to share the property of Joseph B. Charles E.'s claim may be the more meritorious, and no moral turpitude may be attributable to him for the course he has pursued; but the bankrupt act recognizes no such distinctions and is inexorable in its provisions.

I hold, therefore, that sufficient appears to show that Charles E. Bloss had probable cause to believe that Joseph B. Bloss, the alleged bankrupt, was insolvent, and that he suffered the said Charles E. to obtain judgment, execution, and levy with intent to give him a preference, in violation of the bankrupt act, and that therefore the injunction issued in this case ought to be retained and continued till the further order of the court.

The motion to dissolve is therefore denied.