(110 App. Div. 605.)

PEOPLE v. FREEMAN.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. LANDLORD AND TENANT—LEASES—FORFEITURE—DEFAULT.
    Where a lease, providing that, if at any time the rent should remain unpaid for one year after becoming due, the lease should be forfeited, was not declared forfeited for a first default, the lessee remaining in full occupancy and being still recognized as occupying under the lease. equity would not consider prior or subsequent defaults as an absolute forfeiture, until demand was made or some act done restoring the parties to their strict rights, or some affirmative action taken to enforce the forfeiture.
    [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, §§ 333, 335, 343–346.]

2. SAME—ABANDONMENT OF LEASE.
    Under a lease, providing that if default in payment of rents continued for a period of one year the lease should be declared forfeited, the neglect of the lessee to pay the rent was not an abandonment of the lease.
    [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 366.]

3. CANALS—LEASE OF WATER—FAILURE TO COLLECT PAYMENT OR DECLARE FORFEITURE—EFFECT.
    Under a lease by the state of water from a canal, failure of the state authorities to collect rent or declare a forfeiture of the lease for nonpayment of such rent did not make the use of the waters by the lessee unlawful.

4. SAME.
    Under a lease by the state of water from a canal, reserving to the state the right to keep a certain bulkhead in repair and to dictate where and in what manner the water was to be taken, the putting in of a new bulkhead in the dam and the closing of the gates at a time when the lessee was not using the water, thereby preventing the water being used at his mill, were not in hostility to his rights.

5. SAME—LACHES.
    Where a lease by the state of water from a canal provided for a forfeiture on default in payment of rentals, continuing for a period of one year, the state could not sleep on its rights for 54 years after a default and while transfers of property were made, on the theory that a right to use the water existed, and then insist on prior defaults as a forfeiture.

**6. EQUITY—RELIEF FROM DEFAULT IN PAYMENT—CONDITION PRECEDENT.**

A party coming into a court of equity for relief from a default in not paying money according to his contract must pay in money as a condition to relief, and not by pleading the statute of limitations.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 190.]

**7. PAYMENT—EVIDENCE—PRESUMPTION.**

The presumption of payment arising from lapse of time is rebuttable.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Payment, §§ 176–188.]

**8. CANALS—LEASE OF WATER—FORFEITURE FOR NONPAYMENT OF RENT—LIABILITY OF LESSEE—INTEREST.**

Where, under a lease by the state of water rights, providing for a forfeiture upon continuance for a period of one year of default in payment of rent, the state neglected for a period of 54 years to collect rents or enforce a forfeiture for nonpayment thereof, an assignee of the lease was liable for interest on each payment of rent as it became due only from the time he began to use the water, and not from the time of the first default.

Submission of controversy by the people against George H. Freeman. Judgment for the state on conditions.

This is a submission of a controversy, upon facts admitted, pursuant to sections 1279 and 1280 of the Code of Civil Procedure. The canal commissioners of the state, pursuant to law, made a so-called lease, dated April 1, 1843, to Zenas Van Dusen and William Van Dusen, of certain surplus waters from the Glens Falls feeder and dam, forming part of the canal system of the state; the water to be taken and drawn from the dam at such places as the canal commissioners shall deem most advisable for the security of the dam and the convenience of navigation of the feeder and canal. The commissioners reserved to themselves, and to the legislature, the right to limit and control or wholly resume the waters and all the rights granted, whenever in their opinion the safety of the dam and its appendages, or the necessary supply of water for the navigation of the canal and feeder, shall render such limitation and control or resumption necessary, the said Van Dusens "to pay to the commissioners of the land fund yearly, and every year thereafter, on the 1st day of April in each year, the sum of $105," being the appraised value of such surplus water; and they agreed to pay the same. The said lease further provided: "That if at any time the rent hereby reserved shall remain unpaid for one year after the same shall become due, that this lease shall be forfeited to the state, and the said commissioners may thereupon relet said surplus water to any other person in like manner as if no lease thereof had been executed." The last payment of rental, it is conceded, was December 27, 1850, being to April 1, 1850. The said water was used to operate a mill of the said Van Dusens abutting upon said feeder, and the defendant has succeeded by various mesne transfers and conveyances to said mill property and the rights of said Van Dusens under said lease, and the said mill and water has been so used by the defendant and his predecessors until about two years ago, and since that time a custodian has remained in said mill, but it has not been operated. One O'Grady, a section superintendent on the canal, put a new bulkhead in the dam and closed the gates about two years ago, and after the defendant had stopped the operation of the mill; the stopping of the mill had no relation to the acts of said O'Grady, and the canal authorities took no action authorizing the action of said O'Grady with reference to closing said gates and putting in said bulkhead. The putting in of said bulkhead and the closing of the gates prevents the water being used at said mill if the defendant desired to use the same.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Julius M. Mayer, Atty. Gen., and Horace McGuire, Deputy Atty. Gen., for the People.

Marcus T. Hun, for defendant.

JOHN M. KELLOGG, J.   The lease of these surplus waters was valid and binding on the state.   Sweet v. City of Syracuse, 129 N. Y. 318, 27 N. E. 1081, 29 N. E. 289.   If the lease was forfeited for the nonpayment of the yearly rental, that event first occurred April 1, 1852, a year after the first default in payment.   But the defendant and his predecessors in title have used said water and enjoyed the full benefits of said lease ever since, the same as before, until about two years ago, when they ceased to use the water because the mill was closed.   Undoubtedly a forfeiture might have been declared for the first default in payment, or any subsequent default; but, if not then declared, and the lessee remains in full occupancy, and is still recognized as occupying under the lease, equity will not consider prior or subsequent defaults as an absolute forfeiture, until a demand is made or some act done which restores the parties to their strict rights, or some affirmative action taken to enforce the forfeiture.   It must be that the canal authorities knew of the continuous user by the defendant, and that his only right was the lease, and that they had no right to permit such use in the absence of a lease.   The neglect of the lessee to pay was not an abandonment of the lease, and while he continued to use the water he was liable for the agreed payment.   The neglect of the state authorities to collect the payment or declare a forfeiture did not make the use of the waters by the defendant unlawful.   Neither party, therefore, is in a position to claim that the user was not under the lease.   The acts of O'Grady may properly be referred to the right of the state under the lease to keep the bulkhead in repair, and to dictate where and in what manner the waters are to be taken, and, as the defendant was not using the water at that time, were not in hostility to his rights.   The failure to operate the mill and use the water for two years was not intended as an abandonment of the lease, but was for the convenience of the defendant, and was entirely consistent with his rights under the lease.   While the defendant is occupying under said lease, but in default in his payments, and in a position where a forfeiture may be enforced, before any proceedings are brought against him to declare such forfeiture, or evidencing the same, he tenders the amount he considers due for rent and interest, $3,361.18, and offers to pay any further sum which the state authorities may decide to be due; after that the lease was, for the first time, declared by the state forfeited for nonpayment.   If the state was to declare a forfeiture, it should have acted promptly after the default.   It cannot sleep on its right for 54 years, while transfers of the property and business arrangements are made upon the theory that there is a right to use the water, and then insist upon prior defaults as a forfeiture, for after such a long sleep a court of equity will grant proper relief.   The state has the right, even after this long lapse of time, to wake up and enforce its rights, and such rights, according to the letter and spirit of the lease, are to declare it forfeited and at an end, unless the rent is fully paid.   When a party comes into a court of equity for relief from his

default in not paying money according to his contract, as a condition for the relief he must pay in money and not by pleading the statute of limitations. The amount actually due the state is $105 per year from April 1, 1850. This has never been paid, and the people are entitled to it, and the defendant cannot be relieved from the effect of nonpay-ment except by payment of the same. It is true an action at law by the people to recover the money would be barred after 20 years, but a plea for relief asking the favor of the court proceeds upon the willingness of the party to pay, not just what can be recovered in a legal action, because in a legal action the defendant's rights are forfeited, but just what the party seeking the relief has agreed to pay and failed to pay. The statute of limitation is one of repose; it does not pay a debt, or extinguish it; it only bars the remedy by action. Any other means the creditor has for realizing his debt are not affected. Johnson v. Albany & Susquehanna R. R. Co., 54 N. Y. 417, 13 Am. Rep. 607; Rogers v. Murdock, 45 Hun, 30; Maxwell v. Cottle, 72 Hun, 529, 25 N. Y. Supp. 635.

The presumption of payment arising from a long lapse of time is rebuttable. Macaulay v. Palmer, 125 N. Y. 742, 26 N. E. 912; Hulbert v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59. Here the stipulation admits the nonpayment.

It does not appear when the defendant first acquired title to the mill and began to use these waters. Considering the failure of the public authorities to collect these moneys and the permission of the use of the water for this long period of time, it does not seem equitable or necessary that the defendant should be charged with interest upon the moneys which became due before he began to occupy the property and use the water; but he should be charged with interest upon each payment as it became due after he began such use. The time the defendant began such use does not appear. That omission may be supplied by stipulation, or a further hearing may be had with reference thereto. Upon the payment by the defendant of the arrearages in rental and the interest as above, within 20 days after judgment, he is relieved from any forfeiture, and the lease is declared still in force. If such payments are not made, the lease is declared forfeited and at an end, and judgment goes against the defendant under his stipulation for 20 years' rental at $105 per year, with interest on each payment from the time it became due. No costs are awarded. All concur.