county, as provided for by the bankruptcy law, does not affect the validity of the title. The trustee had a good title, conveyed a good title, and the usual search in the United States District Court would disclose his complete record title.

For these reasons, the defendant is entitled to judgment dismissing the complaint, with costs.

Judgment for defendant, with costs.

---

(53 Misc. Rep. 429)

### FIRST NAT. BANK OF WATERLOO v. STORY.

(Supreme Court, Trial Term, Seneca County. March 2, 1907.)

1. PRINCIPAL AND SURETY—CONSTRUCTION OF BONDS—LIABILITY OF SURETY.

A corporation of which defendant was a stockholder had given yearly bonds, signed by certain stockholders, as sureties to plaintiff bank, to secure discounts from 1896 until 1902, except that some of the bonds were for a shorter period. Each contained a limitation of liability to $15,000 and interest at any one time, and provided that it was security for the indebtedness then existing and such that should be incurred within a year, etc. Defendant was a surety on the bonds given for 1900, 1901, and 1902. After insolvency of the corporation, suit was brought on the 1902 bond, and his liability thereunder satisfied, when plaintiff sought to enforce a further liability on the bond given for 1901. *Held*, that such facts, in the absence of proof as to the circumstances under which the bonds were made, were insufficient to show that the latest bond was given as a substitute for the others, and hence the giving of the new bond did not discharge defendant's liability on the old one.

2. SAME—DEMAND.

Where a bond to secure discounts made by a bank for a corporation contained an absolute guaranty of prompt payment at maturity of each and all notes and other obligations in writing of every name and kind made by the corporation. and a covenant that in case of default in payment of any of such obligations the sureties agreed. to pay the same to the bank on demand. a demand on the sureties was not necessary to entitle the bank, on the insolvency of the corporation, to recover against them.

Action by the First National Bank of Waterloo against Leonard Story. Judgment for plaintiff.

Action against defendant as one of six sureties upon a bond given to the plaintiff for the benefit of the Waterloo Organ Company, January 31, 1901. The following is a copy of the bond:

"Whereas, the Waterloo Organ Company, a domestic corporation formed under the laws of this state, desires to obtain loans, discounts, credits, and other pecuniary accommodations of and from the First National Bank of Waterloo, N. Y.; and

"Whereas, the said bank requires security for such loans and discounts and for all other indebtedness or liability of the said company to it; and

"Whereas, the undersigned are interested in said company as stockholders, or otherwise, and are willing to become such security:

"Now, therefore, for the purpose aforesaid and in consideration of the sum of One Dollar to each of us duly paid at the ensealing and delivery hereof, and for other good and valid consideration, the receipt of which is hereby acknowledged and confessed, we, the undersigned, do hereby jointly and severally and each of our heirs, executors and administrators, guarantee and warrant unto the said bank, its successors and assigns, the prompt payment at maturity of each and all the notes, checks, drafts, bills of exchange, and other obligations in writing of every name and kind, made, signed,

drawn, accepted or endorsed by the said Waterloo Organ Company, which the said bank now has, or which it may hereafter have, hold, purchase or obtain within one year from date hereof, but our liability hereunder shall not at any time exceed the sum of Fifteen thousand Dollars ($15,000) and interest thereon.

"And in case default is·made in the payment at maturity of any of the above-mentioned obligations, or in the payment of any lawful claim or demand held by said bank against said company, we do hereby jointly and severally covenant, promise and agree to pay the same to the said bank, its successors or assigns upon demand.

"This instrument is intended to be a full, complete and perfect security and indemnity to the said bank to the extent and for the time above stated, for any indebtedness or liability of any kind owing by the said company to it from time to time, and to be valid and continuous without other or further notice to us or to any of us.

"In witness whereof, we have hereunto set our hands and our respective seals this 31st day of January, A. D. one thousand nine hundred and one.

> "A. C. Reed.
> "Malcolm Love.
> "F. W. Hulbert.
> "Francis Bacon.
> "Leonard Story.
> "C. G. Reed."

(Acknowledged same day.)

·Hammond & Hammond, for plaintiff.
George E. Zartman, for defendant.

FOOTE, J. This action was tried at the Ovid Trial Term before the court without a jury, and has since been submitted upon briefs of counsel. The plaintiff seeks by this action to hold defendant liable as the only solvent surety upon a bond given by the Waterloo Organ Company to the plaintiff on the 31st day of January, 1901, for the amount of 15 mortgage bonds of the Waterloo Organ Company of the denomination of $500 each, being part of an issue of 80 bonds made December 1, 1894, the 15 bonds in question having been acquired by the plaintiff in the month of July, 1901.

The principal defense is that in the month of January, 1902, a new indemnity bond was made by the Waterloo Organ Company to the plaintiff, on which the defendant was also a surety, in the same form and to the same effect as the bond in suit, which, by its terms, was made to secure all then existing indebtedness of the organ company to the plaintiff, as well as all that should be contracted within one year, subject to the same limitation of $15,000 at any one time, and that this latter bond was intended as a renewal of and substitute for the bond in suit.

It appears that the Waterloo Organ Company became insolvent and was adjudged a bankrupt about July, 1902, and at that time the plaintiff held its notes and obligations under discount to the amount of about $60,000, in addition to the mortgage bonds involved in this case. Subsequently and in July, 1904, but before the mortgage bonds involved in the present case became due, the plaintiff brought an action against this defendant upon the last indemnity bond given by the organ company in January, 1902, and alleged as a ground of recovery a large number of promissory notes made or endorsed by the organ company, and discounted by the plaintiff for its account between Janu-

ary and July, 1902. The action came to trial in March, 1905, and the plaintiff, as a basis for recovery, proved the making of the indemnity bond in January, 1902, and the discount by it thereafter of a large number of promissory notes for the organ company, a schedule of which was annexed to the complaint, amounting in all for principal to $14,991.71, and for accrued interest to $2,174.25, making in all $17,165.96, and for this amount the court directed a verdict in favor of the plaintiff. No judgment was entered upon this verdict because of the defendant's request that none should be entered, and within a few days the defendant paid the plaintiff the amount of the verdict with costs of the suit, and the plaintiff delivered to the defendant the promissory notes which had been proved at the trial as a basis for recovery. This recovery and payment defendant now pleads as a bar to a recovery here.

It will be seen that the question presented is: Was the indemnity bond of January, 1902, a substitute for the bond of the previous year, or did the latter remain in force? This depends, I think, upon the intent of the parties. There is nothing in the form of the bond of 1902 which necessarily indicates an intention that it should supersede or be a substitute for the bond of 1901. It appears, however, that the Waterloo Organ Company had had an account at the plaintiff's bank since some time prior to 1896, and from 1896 to 1902, one of these indemnity or guaranty bonds was given to the bank on behalf of the organ company each year, except in the year 1900, when three bonds were given, each to run four months, one in January, one in May, and one in September. Each of these bonds contained the limitation of liability to the amount of $15,000 and interest at any one time. Each provided that it was to be security for the indebtedness then existing and such as should be incurred within one year from its date, not to exceed $15,000 and interest, except the three bonds made in 1900, which were in the same form and to the same effect, except that they were made to cover existing indebtedness and such as should be incurred within four months. The same form of bond was used for the years 1896 to 1898, when a slight change was made in the form, without altering the legal effect of the contract or material to be noted here, but from 1898 to and including 1902, precisely the same form was used as the bond now in suit, except in the year 1900, when each bond was made to run for four months instead of one year, and except that there was some slight change of sureties. The defendant was a surety upon the first bond of 1896, upon the three bonds of 1900, and upon the bonds of 1901 and 1902. It does not appear whether he was also a surety upon the bonds of the other years.

From the circumstance that these bonds were made practically once a year over a period of seven years, and that each bond was made in form to cover all existing liability of the organ company to the bank, as well as indebtedness to accrue for the year to come, and that each contained the same limit of liability to $15,000 and interest, the defendant contends that each bond was a renewal of its predecessor, that a novation took place, and each bond became a substitute for the preceding one which remained no longer in force. The course of

business in respect to the giving of these annual bonds over so many years is quite strongly suggestive of a probability that they were intended to be renewals rather than additonal obligations to those already made, but this probability, if it may be so called, is not supported by any evidence of an actual intent from which a finding of fact to that effect can be made. It is not claimed that when the bond of 1902 was made the previous bond of 1901 was surrendered or canceled. The contrary appears, for the plaintiff is in possession of, and produced on the trial, the bond of 1901. No evidence is offered by the defendant as to the circumstances under which any of these bonds were made. If the defendant, or any of his co-sureties, were asked at any time to sign a renewal bond or a bond to continue the same liability, the fact was not proved or offered to be proved upon the trial. For aught that appears here, the indebtedness of the organ company to the bank may have increased at the end of the year 1901, and the defendant may have been asked to sign an additional bond for an additional $15,000 for the purpose of increasing the limit of liability. If these bonds were intended as renewals or substitutes for each other, the best evidence to show that intent would be the transaction itself. Was a new bond asked for by the bank? If so, for what purpose? What reason was given for wanting another bond? What request, if any, was made of the defendant to sign? Where a public officer renews his bond from year to year or from term to term, the new bond does not supersede the old one in respect to a liability which has already attached under the old bond; but, where a new bond or obligation is intended to take the place of or supersede the prior one, the best evidence of such intent is found in the surrender and cancellation of the prior instrument, and, where the prior instrument is not surrendered or canceled, the presumption must be that it remains in force, unless a contrary intent clearly appears from the new instrument.

This question arose in respect to a bond and contract executed by the First National Bank of Buffalo upon its designation by the canal board to receive the deposit of canal tolls in the years 1880 and 1881. This designation was made annually, and a new contract and bond made for each of those years. The bond given in 1880, which ran to the people of the state, was conditioned that the bank should do and perform all things contained in the contract on its part to be done and performed, and that it would well and faithfully account for and pay over all moneys deposited with it or for which it should become liable in and by said contract, and that the bank should account for and pay over all moneys then on deposit in said bank or due or to become due thereafter to the people. One Cushing was the surety upon this bond. At the time the bond was given there was on deposit of canal tolls in the First National Bank of Buffalo $65,000. During the year 1880 the bank received $73,567, and the treasurer drew out $68,323.03, which, with the accrued interest, left a balance due the state of $73,001. March 31, 1881, the bank was again designated, and the same form of bond was made covering the amount then on deposit and such as should be received during the year, which bond was signed by other sureties, but not by Cushing. The bank

became insolvent in April, 1882. During the year 1881 there had been deposited $32,421.46, and withdrawn by the treasurer $35,000, leaving a balance due of $70,422.46. The state, through the Attorney General, brought an action upon the bond of 1880 against Cushing to recover the balance which the bank had received and had on hand at the close of the business of that year. Mr. Cushing very stubbornly contested his liability, claiming that the new bond of 1881 on which he was not a surety superseded and took the place of the bond signed by him; that, in express terms, it covered the liability of the bank for the fund on deposit at the close of the year 1881, and so was coextensive with the old bond; and that, although the old bond had not been surrendered or canceled, taking the new one was an accord and satisfaction in respect to the old one. The learned referee before whom the case was tried (the late Mr. Moak of Albany) held with Mr. Cushing, and dismissed the complaint. On appeal this judgment was reversed (People v. Cushing, 36 Hun, 483), and in a very carefully considered opinion in the Appellate Division by Learned, P. J., it was held that the acceptance of the new bond did not of itself supersede or take the place of the prior bond, and was not an accord and satisfaction; while such would have been its effect if so intended, that there was no proof of such an intent. It seems that this case was never retried for the reason that the people recovered the whole amount involved in another action against the sureties upon the bond of 1881. Barnes v. Cushing, 43 App. Div. 158, 59 N. Y. Supp. 345. The case against the sureties on the bond of 1881 went to the Court of Appeals, and is reported sub nom. People v. Lee, 104 N. Y. 441, 10 N. E. 884. The state having collected from Barnes, the surety on the bond of 1881, he brought an action for contribution against Cushing, as surety on the bond of 1880, in respect to the amount on deposit in the bank at the close of the year 1880. In this case the question was directly presented as to whether the bond of 1881 superseded the bond of 1880, and the learned Appellate Division in the First Department held that it did. Barnes v. Cushing, 43 App. Div. 158, 59 N. Y. Supp. 345. The case came before the Court of Appeals (Barnes v. Cushing, 168 N. Y. 542, 61 N. E. 902), and the question was there discussed at length by able counsel as to whether, from the form of the bond and the nature of the transaction, an intent was not shown that the new bond of 1881 should supersede and take the place of the previous bond of 1880 upon which Cushing was surety, and that learned court held, in an opinion by Bartlett, J., that such an intent would not be inferred or presumed in the absence of other evidence to support it.

I deem this decision controlling in the present case. The appointment of the First National Bank of Buffalo to receive the canal deposits was an annual appointment for a fixed term, requiring a new contract and bond each year. There was much reason for a surety upon one of these bonds to assume that his liability would end with the year upon a new appointment and a new bond being given. The new bond covered in express terms the very liability for which Cushing was subsequently held, namely, for the moneys on deposit in bank at the close of the year 1880. If, under these circumstances, no intent can be found from the transaction itself that the new bond

should supersede the old one, much less can such an intent be found in the present case as a fact from the form of the bonds and the nature of the transactions alone. The bonds in 'the case at bar are each limited to $15,000 while the bonds which Cushing signed were unlimited in amount. It is urged for the defendant that this is a circumstance of importance. It is pointed out that the bond of 1902 covered not only the organ company's liabilities to be incurred in that year, but all liabilities existing at the date of the bond, and that by the express terms of the bond, defendant's liability for both is limited to $15,000. If the present suit were upon the bond of 1902, there would be no answer to the defendant's contention in this respect, but it must be held that the defendant's liability upon the bond of 1901 is in no wise affected by the terms of the later bond. They are separate and independent contracts, and afford no intrinsic evidence of an intent on the defendant's part to limit his liability under both bonds to $15,000.

Defendant also contends that a demand upon him is necessary before an action can be maintained upon this guaranty bond. This question was raised in the first instance 'by demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action in that it failed to allege any such demand. This demurrer came to argument at Special Term and was overruled, whereupon the defendant answered. It is urged that the decision overruling the demurrer should be reconsidered here, for the reason that the learned judge misapprehended the precise grounds of the defendant's demurrer, as shown by his written opinion, in which he discusses only the question of the necessity of a demand upon the organ company, while it was the want of a demand upon the defendant himself which is complained of. It does not follow that the defendant's point was not considered at the Special Term because nothing is said about it in the opinion. It was necessarily involved and so decided, but whether controlling here or not, I think the point is not well taken. The bond contains an absolute guaranty of "prompt payment at maturity of each and all notes  *  *  *  and other obligations in writing of every name and kind made  *  *  *  by said Waterloo Organ Company." If a guaranty of payment had been endorsed upon the mortgage bonds in suit and signed by the defendant, it is certain that no demand upon the defendant before suit would be necessary. The legal effect of the guaranty is precisely the same as if it had been endorsed upon these particular bonds. The subsequent clause of the bond by which the sureties, in case of default in payment of any of the obligations mentioned, covenant and agree to pay the same to the bank upon demand, does not change the nature of the guaranty contract. It is an additional agreement not intended to limit the force and legal effect of the preceding clause, and, under the authorities, no demand was necessary. Douglass v. Howland, 24 Wend. 35; Genesee College v. Dodge, 26 N. Y. 213.

It follows that the plaintiff is entitled to judgment for the amount of the principal of the mortgage bonds, with unpaid interest and costs.