FIRST NAT. BANK OF WATERLOO v. EXCHANGE NAT. BANK OF
SENECA FALLS et al.

(Supreme Court, Equity Term, Seneca County. June 7, 1915.)

1. PLEDGES ⬤⇒4—INTENTION OF THE PARTIES.
   In determining the nature of an instrument by which a lien was given
   on stocks, effect should be given to the intent of the parties.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 6–13, 30; Dec.
   Dig. ⬤⇒4.]

2. CHATTEL MORTGAGES ⬤⇒8—WHAT CONSTITUTES—PLEDGE DISTINGUISHED.
   Corporate stock, which was in the possession of another bank, was, un-
   der an agreement with plaintiff bank and one of its debtors, transferred
   to plaintiff as a continuing collateral security. *Held* that, as posses-
   sion of the stock could not be given, the agreement should be construed as
   a valid pledge, instead of a chattel mortgage, particularly as the cer-
   tificates merely represented the stock, and were not the shares themselves.
   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 20–22;
   Dec. Dig. ⬤⇒8.]

3. BILLS AND NOTES ⬤⇒452—AGREEMENTS—CONSTRUCTION.
   An agreement that a bank should not collect a note until the maker
   was prepared to meet it is merely an agreement that the maker should
   have a reasonable time, and will not preclude recovery because the maker
   never became able to meet it.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1303,
   1352–1364, 1367–1376; Dec. Dig. ⬤⇒452.]

4. PAYMENT ⬤⇒47—WHAT CONSTITUTES.
   Where notes, to secure which a mortgage was pledged as security were
   paid by one of the indorsers, and plaintiff collected the collateral and ap-
   plied it to other obligations, crediting the payments thereon, such pay-
   ments did not discharge the other obligations, where the indorser who
   paid the first notes was held subrogated to the collateral.
   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 127, 129; Dec.
   Dig. ⬤⇒47.]

5. LIMITATION OF ACTIONS ⬤⇒151—RUNNING OF STATUTE.
   Where corporate stock is pledged as a continuing collateral, limitations
   do not run against notes which had from time to time been renewed up
   to within five or six years of the suit, though the original obligations were
   incurred more than ten years before suit.
   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
   614–618, 620; Dec. Dig. ⬤⇒151.]

6. PLEDGES ⬤⇒19—CONSIDERATION—AGREEMENT.
   A debtor, who had pledged stocks and bonds with plaintiff bank to se-
   cure any and all of his indebtedness, entered into an agreement provid-
   ing that he and others should be liable to the bank for obligations of a
   corporation. The corporation issued bonds, which were acquired by the
   bank. *Held,* that the collateral was subject to the obligations of the cor-
   poration, though they were renewed from time to time.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig.
   ⬤⇒19.]

7. BANKRUPTCY ⬤⇒172—AGREEMENTS—VALIDITY.
   A pledge of corporate stock, made several years before the pledgor be-
   came a bankrupt, is not avoidable by the pledgor's trustee in bankruptcy.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec.
   Dig. ⬤⇒172.]

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. BANKRUPTCY ⬡⟿364—SECURITY—WAIVER OF.

Where a creditor bank, which held collateral, proved its claim as an unsecured one and received dividends on that basis, it waived all rights in the collateral.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 485, 504; Dec. Dig. ⬡⟿364.]

9. BANKS AND BANKING ⬡⟿102—RIGHTS OF CASHIER.

A bank is bound by the action of its cashier with respect to a claim in bankruptcy.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 239–243; Dec. Dig. ⬡⟿102.]

Action by the First National Bank of Waterloo against the Exchange National Bank of Seneca Falls and others. Judgment for plaintiff.

Bacon & Huff, of Waterloo (W. Smith O'Brien, of Geneva, of counsel), for plaintiff.

Hermon A. Carmer, of Seneca Falls (Charles A. Hawley, of Seneca Falls, of counsel), for defendant Exchange Nat. Bank.

George E. Zartman, of Waterloo, for defendant trustee in bankruptcy.

CLARK, J. Plaintiff's objection to the reading of the evidence of Leonard Story, deceased, given upon a former trial, upon which objection decision was reserved, is overruled, with an exception to plaintiff.

This action is brought to foreclose a lien claimed to be held by plaintiff on 461 shares of the capital stock of the Waterloo Wagon Company, Limited, and 253 shares of the capital stock of the First National Bank of Waterloo, all of which stocks are, and have been since February 20, 1899, in the possession of defendant Exchange National Bank of Seneca Falls. The plaintiff's lien, if it has any, exists by virtue of a written agreement made February 15, 1902, between the First National Bank of Waterloo and Francis Bacon, by which Bacon, the then owner of said stocks, and which were in the actual possession of defendant Exchange National Bank as collateral security for the payment of any indebtedness owing to said bank by the Waterloo Wagon Company, Limited, or Francis Bacon, transferred to the First National Bank of Waterloo all of said stocks—

"as a continuing collateral security for the payment to it of any indebtedness or liability of any kind, absolute or contingent, now existing or that may hereafter exist, arise, accrue, or be contracted on the part of the Waterloo Wagon Company, Limited, or himself, to said bank, and said shares of stock, upon their surrender by the Exchange National Bank, shall be deposited with the said First National Bank of Waterloo."

The plaintiff brings this action to enforce its lien under that agreement, for the purpose of collecting certain obligations which it has against Francis Bacon, the payment of which is claimed to have been secured by the pledge of these stocks.

[1, 2] Defendant Zartman, trustee in bankruptcy of Francis Bacon, contends that this action cannot be maintained, for the reason, among others, that if the instrument above quoted is a chattel mortgage it is

invalid, because of the conceded fact that it was never filed, and that if it is regarded as a pledge it is invalid, because the stocks were at the time the instrument was made, and ever since have been, in the possession of the Exchange National Bank of Seneca Falls, and were never delivered to the plaintiff in this action, and that there cannot be a pledge of these stocks without a delivery thereof.

I cannot agree with the learned trustee in bankruptcy in that regard. While it is true that under ordinary circumstances it is necessary to have a delivery of the article sought to be pledged before a pledge is complete and effectual, still in a transaction like this, where stock certificates were the subject of the attempted pledge, and where they were in the possession of another party for a specific purpose as collateral security, and where no delivery of possession was at that time possible, the plain intent of the parties to have these stocks pledged for the purpose stated in the agreement between plaintiff and Francis Bacon, dated February 15, 1902, should not be defeated. These certificates represented stocks, but were not the stocks themselves, and it being at that time impossible to deliver them, because of their being held by the defendant Exchange National Bank, a valid pledge was made by the written transfer executed by the owner of the stocks to this plaintiff February 15, 1902.

The intention of the parties should be carried out, if that intention can be ascertained from the instrument which was executed by them. A careful reading of it leads to the conclusion that the parties intended that these stocks should be pledged to the plaintiff as a continuing collateral security for the payment to it of any indebtedness of any kind then existing, or that might thereafter exist, on the part of the Waterloo Wagon Company, Limited, or Francis Bacon, to said bank, and it must therefore be held that the instrument of February 15, 1902, was a valid pledge, and not a chattel mortgage; the circumstances surrounding this case justifying the conclusion that it was also the intention of the parties that the temporary possession by the Exchange National Bank of the stocks in question was also regarded as the possession of the plaintiff, to whom the stocks were pledged by Bacon February 15, 1902. Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307; First National Bank of Waterloo v. Bacon, 113 App. Div. 612, 98 N. Y. Supp. 717; Jones on Pledges (2d Ed.) § 83; 31 Cyc. p. 791, note 67.

The obligations owing to plaintiff by Francis Bacon, and which it seeks to enforce under the security of the pledged stocks above referred to, are as follows:

First. A promissory note, executed by Francis Bacon, for $4,010, dated April 11, 1901, upon which no payments, either of principal or interest, have been made.

Second. Another note, executed by Francis Bacon, for $497, dated February 4, 1902, and several times renewed, the last renewal being dated June 14, 1909, upon which there is claimed to be unpaid $200, with interest from June 14, 1909.

Third. Another promissory note, executed by Francis Bacon, for $800, and several times renewed, the last renewal bearing date February 27, 1911, upon which there is now claimed to be unpaid $860.80, with interest from March 8, 1909, less a credit of $203.30, with interest from August 30, 1909.

Fourth. Fifteen and a fraction of the corporate bonds of the Waterloo

Organ Company, of $500 each, the payment of which was guaranteed by the bond of Francis Bacon and others May 24, 1900, upon which Organ Company bonds there remains unpaid $7,893.56, with interest from September 21, 1900, less payments of $1,716.32 August 15, 1908, and $817.23 August 16, 1909.

The Waterloo Organ Company was adjudged a bankrupt July 2, 1902, and Francis Bacon was adjudged a bankrupt May 2, 1904, and the defendant George E. Zartman was appointed and is now acting trustee of the estate of said Francis Bacon. By his answer the trustee disputes the validity of any of the obligations against Francis Bacon sought to be enforced by plaintiff in this litigation, alleging as to the $4,010 note that it was given with the agreement, indorsed thereon, that it was not to be paid until the maker was "prepared" to meet it, and that each of the other notes sought to be enforced has been paid, either in whole or in part, and that the guaranty bonds executed by Bacon and others did not include, and were not intended to include, these bonds of the Waterloo Organ Company, and these various claims will be considered in the order in which they have been referred to in the pleadings.

[3] The $4,010 note, executed by Francis Bacon to the First National Bank of Waterloo April 11, 1901, contained on the back thereof the following statement, signed by the cashier of plaintiff's bank:

"This note is taken for note of [Waterloo] Water Company, dated October 2, 1894, on which Francis Bacon is a guarantor, and with the understanding that the Bank will not demand its payment until Mr. Bacon is prepared to meet it."

And defendant trustee urges that that note cannot be enforced, for the reason that it is established that never since the note was given has Francis Bacon been "prepared" to meet it. The intention of the parties ought to control in a matter of this kind, and if the contention of the trustee in bankruptcy was upheld it would mean that, although that note was a perfectly valid one and given for a sufficient consideration, still the plaintiff could never enforce it, if perchance Mr. Bacon should say that he was not "prepared" to meet it. That memorandum on the back of the note simply meant that Mr. Bacon should have a reasonable time after it became due in which to make payment, but that when the note became due, if a demand was made (and it has been established that a demand was made of Mr. Bacon), if he neglected to pay it within a reasonable time, the bank could proceed to enforce payment.

This transaction would not be unlike that of a builder, who should hear of a party desiring to erect a house, and he should go to such person and tell him that he would put him up a house according to his plans for a specified sum, and the lot owner should demur, because he did not feel able to build at that time, and the builder should say that he would erect the house, and the lot owner need not pay for it until he got ready, or until he was "prepared" to do so. Can it be argued that that would absolve the lot owner from paying for the house which the other party had built, and of which he was enjoying the possession and benefit?

Transactions of this kind should be interpreted in the light of reason and common sense, and that would lead to the conclusion that in the case of the householder, as well as the maker of the note in ques-

tion, payment was to be made within a reasonable time. In this case the cashier of the bank demanded of Mr. Bacon that he pay the note at maturity, and Mr. Bacon replied that it would be impossible for him to do so. The bank has waited ever since for its pay. It has certainly waited a reasonable time, and the note must be deemed a perfectly legal and valid obligation, and is enforceable and should be collected from the pledged stocks above referred to. It would hardly seem necessary to cite numerous authorities that exist, holding in effect that a memorandum or agreement of this character meant simply that the maker should have a reasonable time after the note became due in which to make payment.

[4, 5] On the 14th day of June, 1909, Francis Bacon gave his note for $250, upon which there is unpaid $200 and interest from June 14, 1909, and on February 27, 1911, Mr. Bacon gave his renewal note for $822.05, and there is now unpaid on said note $860.80, with interest from March 8, 1909, less a payment of $203.30, made August 30, 1908. Each of these notes is owned and held by plaintiff, and the payment of them is secured by the pledged stocks in question. There is a dispute as to the payments on these notes; the defendant trustee alleging that the first note is entirely paid, and that there should be applied on the last note a credit of $224.98 under date of November 16, 1909.

The evidence establishes the fact that prior to June, 1909, the plaintiff held two notes of $1,500 each, made by a corporation known as the Bacon Carriage Company, and that Pauline M. Bacon, wife of Francis Bacon, was the first indorser on these notes, and William Rowerdink was the second indorser. In 1904 Pauline M. Bacon assigned to plaintiff a bond and mortgage, made by one Randolph, as collateral security for the payment of these notes, and certain other obligations held by plaintiff. These two $1,500 notes were finally paid by Mr. Rowerdink. Subsequently Mrs. Bacon executed to the plaintiff an absolute assignment of the Randolph mortgage, whereupon the plaintiff took the notes, Exhibits 2 and 3, sought to be enforced here, with others, and placed them in an envelope addressed to Mrs. Bacon, and indorsed, on a renewal it held of the $800 note, a credit of $224.98, which was the balance of the mortgage which had been assigned. The envelope containing these two notes was never delivered to Mrs. Bacon, but still remains in the possession of plaintiff. Subsequently Rowerdink brought an action against this plaintiff to compel an assignment of the Randolph mortgage to him, upon the ground that he, having paid the two $1,500 notes above mentioned, became subrogated to any rights plaintiff had in the Randolph mortgage, and was the owner thereof, and succeeded in that action.

So from all this evidence it appears that, when the plaintiff received from Mrs. Bacon an absolute assignment of the Randolph mortgage, it marked certain notes, including the $200 note above mentioned, as paid, and had indorsed on the $800 note a credit of $224.98, representing the supposed balance of the Randolph mortgage, the fact is that subsequently in the Rowerdink action it was compelled to give

up the Randolph mortgage, which had been assigned to it by Mrs. Bacon, and consequently it never received the payments which it had thus credited. Surely these notes could not be deemed paid, or the indorsement could not be enforced as a payment, when subsequent developments established conclusively that no such payments had ever been made to plaintiff. An honest debt cannot be wiped out in any such way. The notes have not been paid, and the first note must be deemed a valid obligation, with $200 unpaid, and with interest from June 14, 1909. The second note must also be deemed a valid obligation, with $860.80 unpaid thereon, and with interest from March 8, 1909, less a credit of $203.30 paid August 30, 1908, and the payment of each of said notes is secured by the pledged stocks in question, and the statute of limitations is not a bar to either of the three notes above mentioned. Hulbert v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59; House v. Carr, 185 N. Y. 453, 78 N. E. 171, 6 L. R. A. (N. S.) 510, 113 Am. St. Rep. 936, 7 Ann. Cas. 185; Greenley v. Greenley, 114 App. Div. 640, 100 N. Y. Supp. 114; People v. Freeman, 110 App. Div. 605, 97 N. Y. Supp. 343.

[6] The plaintiff is the owner of certain bonds of the Waterloo Organ Company, numbered 60 to 74, inclusive, and a fractional part of bond No. 75, and there is now due thereon $7,893.56, with interest from September 21, 1900, less $1,716.32 paid August 15, 1908, and $817.23 paid August 16, 1909, and these bonds are secured by the stocks pledged to plaintiff by the instrument dated February 15, 1902, above referred to. The Waterloo Organ Company was a domestic corporation, in which Francis Bacon was largely interested, and it was adjudged a bankrupt in July, 1902. On May 24, 1900, Francis Bacon and others interested in the Waterloo Organ Company, made and delivered to the plaintiff a guaranty bond, of which the following is a copy:

"Whereas, the Waterloo Organ Company, a domestic corporation formed under the laws of this state, desires to obtain loans, discounts, credits, and other pecuniary accommodations of and from the First National Bank of Waterloo, N. Y.; and whereas, the said bank requires security for such loans and discounts and for all other indebtedness or liability of the said company to it; and whereas, the undersigned are interested in said company as stockholders or otherwise, and are willing to become such security:

"Now, therefore, for the purpose aforesaid, and in consideration of the sum of one dollar to each of us duly paid at the ensealing and delivery hereof, and for other good and valid consideration, the receipt of which is hereby acknowledged and confessed, we, the undersigned, do hereby jointly and severally, for ourselves, and our and each of our heirs, executors, and administrators guarantee and warrant unto the said bank, its successors and assigns, the prompt payment at maturity of each and all the notes, checks, drafts, bills of exchange, and other obligations in writing of every name and kind, made, signed, drawn, accepted, or indorsed by the said Waterloo Organ Company, which the said bank now has, or which it may hereafter have, hold, purchase, or obtain within four months from date hereof; but our liability hereunder shall not at any time exceed the sum of fifteen thousand dollars ($15,-000.00) and interest thereon. And in case default is made in the payment at maturity of any of the above-mentioned obligations, or in the payment of any lawful claim or demand held by said bank against said company, we do hereby jointly and severally covenant, promise, and agree to pay the same to the said bank, its successors or assigns, upon demand. This instrument is intended to be a full, complete, and perfect security and indemnity to the said

bank, to the extent and for the time above stated, for any indebtedness or liability of any kind owing by said company to it from time to time, and to be valid and continuous without other or further notice to us or any of us.

"In witness whereof, we have hereunto set our hands and our respective seals this 24th day of May, A. D. 1900.          A. C. Reed.

"Malcolm Love.
"C. G. Reed.
"Fred W. Hulbert.
"J. W. Chamberlain.
"Francis Bacon.
"Leonard Story."

December 1, 1894, the Waterloo Organ Company authorized the issue of 80 of its corporate bonds, in the sum of $500 each, and on September 21, 1900, and after the guaranty bond above quoted had been given to the plaintiff by Francis Bacon and others, the Waterloo Organ Company assigned to plaintiff 21 of these corporate bonds, numbered from 60 to 80, inclusive, as collateral security for the payment of any Organ Company obligations which plaintiff then had or which it might thereafter have, and while the plaintiff had these bonds, and before his bankruptcy, Francis Bacon made and delivered to plaintiff the assignment of the stocks in question, dated February 15, 1902, which is the pledge sought to be foreclosed in this action. Plaintiff is still the owner of 15 and a fraction of these bonds, which are absolute obligations of the Waterloo Organ Company, the payment of which was guaranteed by Francis Bacon and others, by their guaranty bond to plaintiff, dated May 24, 1900, and Mr. Bacon and the other parties who signed the guaranty bond thereby became personally liable to the plaintiff for these Organ Company bonds. When Francis Bacon pledged these stocks to plaintiff, by the written assignment of February 15, 1902, there was a present existing liability under the Organ Company bonds to which plaintiff's lien at once attached, and that lien has never been extinguished or released, but still exists and is in full force.

A reading of the guaranty bond of May 24, 1900, under which this action was brought, shows clearly that it was intended to cover all obligations of the Organ Company which were held or might be acquired by the plaintiff bank within the time therein specified, as the result of direct negotiations with the Organ Company. The bank increased its loans and accommodations to the Organ Company in substantial proportion as the guaranty bonds given by Bacon and others increased its security, and although a series of guaranty bonds was given in different years, and the form of the bonds was slightly changed, it did not affect the substance, and did not change the purpose for which they were given, and as new bonds were given they were evidently not intended to supersede any prior ones, but were independent undertakings, intended to provide for additional security to the bank. The bonds of the Organ Company were clearly liabilities coming within the scope of the guaranty bond executed by Bacon and others May 24, 1900, to the plaintiff, and are secured by the pledge to plaintiff of the stocks in question. First National Bank of Waterloo v. Story, 53 Misc. Rep. 429, 103 N. Y. Supp. 233; First National Bank of Water-

loo v. Story, 131 App. Div. 472, 115 N. Y. Supp. 421; First National Bank of Waterloo v. Story, 163 App. Div. 279, 148 N. Y. Supp. 886.

[7] No other construction would be possible that would be in harmony with the plain intent of the parties, as expressed in the guaranty bond in question. The pledge of these stocks of February 15, 1902, to plaintiff, executed by Bacon, having been made long before his bankruptcy, whatever rights his trustee acquired by virtue of the bankruptcy proceedings would be subject to any prior rights or claims acquired by plaintiff under the pledge of February 15, 1902.

[8, 9] The defendant Exchange National Bank of Seneca Falls alleges in its answer that the stocks in question were pledged to and deposited with it by Francis Bacon on February 20, 1899, and that when Mr. Bacon was adjudged a bankrupt it still held three notes upon which he was indorser, and that there remains due thereon of principal and interest several thousand dollars. On April 25, 1905, the defendant bank, through its cashier, filed a proof of claim in the bankruptcy court against the estate of Francis Bacon on these three notes, and it waived its claim to the stocks in question as security as against the trustee in bankruptcy, and subsequently it received dividends from the bankrupt's estate amounting in the aggregate to $1,245.76.

The three notes in question, upon which Francis Bacon was indorser, were not obligations of the Waterloo Wagon Company, but were notes of one William B. Clark. The defendant Exchange National Bank, in whatever it did with reference to collecting these three notes in the bankruptcy court, was represented by its cashier and is bound by his actions. When it waived its security in the bankruptcy court, as against the trustee in bankruptcy, it likewise waived its security against Francis Bacon and his estate. The bank, in what it did in the bankruptcy court, elected to waive any lien and security it had, and prove its claim as an unsecured creditor, and the bank, by accepting the dividends, ratified the acts of its cashier, in waiving the security and proceeding to prove its claim as an unsecured one, and it must be held that, when the bank proved its claim under the three Clark notes in the Bacon bankruptcy proceedings as an unsecured claim, it waived any security it had upon the pledged stocks in question, and its lien thereon became extinguished. In other words, by proving its claim in the Bacon bankruptcy proceedings as an unsecured one, it waived whatever security it had, and plaintiff's lien under the agreement of February 15, 1902, became the first lien on the stocks in question. Defendant Exchange National Bank, having elected its remedy by filing a claim and accepting a dividend as an unsecured creditor of Francis Bacon, being in possession of all the facts at the time it filed its claim, must be deemed bound by its action in electing its remedy, and has no claim or lien upon the stocks in question. In re Bloss, 4 N. B. R. 147, Fed. Cas. No. 1,562; Heard v. Jones, 15 N. B. R. 402, 56 Ga. 271. Collier on Bankruptcy (8th Ed.) p. 598.

Upon the whole case it must be held:

First. That on the note of April 11, 1901, there is due to plaintiff $4,010, with interest from the date of the note.

Second. Upon the $497 note, dated February 4, 1902, and renewed

in June, 1909, there is due to plaintiff the sum of $200, with interest from June, 1909.

Third. Upon the $800 renewal note, dated June 23, 1904, there is due to plaintiff the sum of $860.80, with interest from March 8, 1909, less a credit of $203.30 as of August 30, 1908.

Fourth. Upon the 15 and a fraction Waterloo Organ Company bonds there is due plaintiff $7,893.56, with interest from September 21, 1900, less $1,716.32 paid August 15, 1908, and $817.23 paid August 16, 1909.

These claims were all valid and in existence at the time of the bankruptcy of Francis Bacon. Plaintiff, under the instrument executed by Bacon and the bank, February 15, 1902, holds the stocks therein referred to as security for the payment of the above claims; the notes being the personal obligations of Francis Bacon, and the bonds of the Waterloo Organ Company held by plaintiff being clearly within the scope of the guaranty bond of May 24, 1900, executed by Bacon and others to this plaintiff.

Judgment is therefore directed in favor of the plaintiff for the relief demanded in the complaint, with costs to be taxed, and payable out of proceeds of sale of the stocks in question.