John SANDEN and Anna B. Sanden, Plaintiffs and Appellants,

v.

Arland G. HANSON and Evelyn Hanson, Defendants and Respondents.

Civ. Nos. 8818, 8819.

Supreme Court of North Dakota.

Aug. 31, 1972.

Rehearing Denied Nov. 1, 1972.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for plaintiffs and appellants.

Ella Van Berkom, Minot, for defendants and respondents.

PAULSON, Judge.

This is an appeal by the plaintiffs, John Sanden and Anna B. Sanden, from judgments of the District Court of Bottineau County, dismissing their complaints in two actions which were consolidated for trial. The plaintiffs have demanded a trial de novo.

The first action was initiated on July 31, 1968, by summons and complaint, which complaint alleged that on September 10, 1965, the defendants, Arland G. Hanson and Evelyn Hanson, became indebted to the Sandens by reason of a promissory note executed on September 10, 1965. The complaint further alleged that $3,100 had been paid on the note by the Hansons and that $6,900 was still owing.

In response to this complaint the Hansons filed an answer and counterclaim alleging that the Sandens were entitled to no payments on the note described in the complaint. The transcript of the trial and the memorandum opinion of the district court reveal that the basis for the Hansons' denial of liability on the note dated September 10, 1965, was the existence of a "Stand-

by Agreement" entered into by the Sandens, the Hansons, and the Small Business Administration acting through the First National Bank in Bottineau, North Dakota.

The promissory note, which is the basis of the Sandens' complaint, and the Standby Agreement, which is the basis of the Hansons' answer and counterclaim, are the result of a series of dealings between the Sandens and the Hansons whereby the Hansons purchased a children's clothing store from the Sandens.

During the summer of 1965, after the Hansons had agreed to purchase the Sandens' business for a total price of $25,000 ($15,000 was allocated to inventory and the remainder, $10,000, was allocated to fixtures), the Sandens and the Hansons decided to look for methods of financing the sale. To this end the Hansons arranged a Small Business Administration loan for $15,000 through the First National Bank in Bottineau. However, before the SBA would make the loan to the Hansons, it required that the Hansons, the Sandens, and the SBA enter into a Standby Agreement, the purpose of which was to ensure that the SBA loan of $15,000 would be repaid before any payments (with the exception of some payments allowed by the Standby Agreement) were made by the Hansons to the Sandens on the $10,000, which part of the total purchase price of $25,000 would still be owing by the Hansons to the Sandens. After the Sandens and the Hansons signed the Standby Agreement, the SBA, acting through the First National Bank in Bottineau, loaned the $15,000 to the Hansons. This amount was then paid to the Sandens as payment for the inventory in the store, thereby leaving $10,000 still owing the Sandens for the store fixtures.

On September 10, 1965, the same day that the SBA made the loan of $15,000 to the Hansons pursuant to the Standby Agreement, the Hansons and the Sandens executed a promissory note for the $10,000

still owing on the total purchase price of $25,000. Pursuant to the note, the Hansons made monthly installment payments totaling $3,100 until, because of financial difficulties encountered in the conduct of the children's clothing store business, they were unable to make any further payments to the Sandens. Approximately three months after the discontinuation of payments on the note, the Sandens commenced this action for the balance due.

The primary issue raised by the Sandens on this appeal from the dismissal of their action on the promissory note is the extent to which the terms of the Standby Agreement may affect or modify the terms of the promissory note executed by the Hansons and payable to the Sandens.

The Standby Agreement provides, in pertinent part, as follows:

" . . . Borrower, John & Anna B. Sanden, Bottineau, North Dakota (hereinafter called 'Standby Creditor') . . covenant to and *with each other*, and to and with Bank and SBA as follows:

. . . . . .

"2. *Without the prior written consent of Bank and SBA, Standby Creditor* . . . *will take no action* (a) *to assert, collect or enforce* all, or any part of, the Claim . . . [The Claim being defined by the Standby Agreement as the $10,000 still owed by the Hansons to the Sandens on the total purchase price of $25,000.]

. . . . . .

"9. This Standby Agreement and all obligations hereunder or with respect hereto, of . . . Standby Creditor . . . *shall continue in full force and effect until payment in full of the indebtedness evidenced by the Note* . . . [The Note is one for $15,000 executed by the Hansons and payable to the First National Bank in Bottineau in consideration of the $15,000 loaned by the Bank to the Hansons.]" [Emphasis added.]

■ The extent, if any, to which the above provisions of the Standby Agreement may affect or modify the terms of the promissory note which is the basis of this action is specifically dealt with in § 41–03–19 of the North Dakota Century Code, which, in part, provides:

41–03–19. (3–119) Other writings affecting instrument.—1. As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction . . . "

Section 41–03–19, N.D.C.C., applies to negotiable instruments the general rule (12 Am.Jur.2d, Bills and Notes § 1244) that writings executed as part of the same transaction are to be read together as a single agreement because, as between the immediate parties, a negotiable instrument is merely a contract, and is no exception to the principle that the courts will look to the entire contract in writing. 2 U.L.A., Uniform Commercial Code § 3–119, Comment No. 3.

■■ Thus, since the issue of the terms of the promissory note is between the obligors, the Hansons, and their immediate obligees, the Sandens, and since the other agreement, the Standby Agreement, is in writing, § 41–03–19, N.D.C.C., requires a modification of the terms of the note if the Standby Agreement and the note were executed as parts of the same transaction. The meaning of the phrase "as a part of the same transaction" (§ 41–03–19, N.D.C.C.) has been stated as "so proximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or an occurrence within such time as would reasonably make it part of the transaction". Elsberry Equipment Company v. Short, 63 Ill.App.2d 336, 211 N.E.2d 463, 468 (1965). Certainly the Standby Agreement executed on August 3, 1965, and the promissory note executed on September 10, 1965, and payable to the Sandens, can be said to have arisen out of the same

transaction as that phrase has been defined above, since they were both executed as part of a plan for financing the sale of the children's clothing store and since a reading of the provisions of the Standby Agreement indicates that it was intended to limit the right of the Sandens to assert the claim for the $10,000 still owing after September 10, 1965, even if that assertion were to take the form of securing a judgment on a promissory note evidencing the claim.

Thus, § 41–03–19, N.D.C.C., as applied to this case, requires that the terms of the promissory note, which is the basis of this action, be modified to conform to the provisions of the Standby Agreement entered into between the Sandens, the Hansons, and the SBA. Such a modification requires that this Court add a provision to the note, the effect of which would be to prevent the payees, the Sandens, from proceeding to enforce the note by securing a judgment on it until the written consent of the SBA has been obtained as called for in paragraph 2 of the Standby Agreement, or until the payment in full of the $15,000 owing to the First National Bank in Bottineau. This modification of the note is consistent with the intention of the Sandens and the Hansons when they entered into the arrangement for the financing of the sale of the children's clothing store which was to allow the Hansons to discharge their obligation under the SBA loan before being burdened by any action by the Standby Creditors on their claim for $10,000.

■ Having found that the promissory note and the Standby Agreement, when read together, prevent the Sandens from securing a judgment on the note until the written consent of the SBA to do so has been obtained or until the $15,000 owing to the Bank has been fully paid, we conclude that since neither of these conditions has been met, the action on the note by the Sandens was properly dismissed.

The second action was initiated on October 25, 1968, by summons and complaint, which complaint alleged that the Sandens

had leased to the Hansons the premises on which the children's store business was conducted for a term of five years commencing on July 1, 1965, and expiring on June 30, 1970, at a monthly rental of $125 per month. The complaint further alleged that the Hansons took possession of the leased premises and paid the monthly rent up to and including the month of June 1968, but that no rent had been paid after June 1968.

The Hansons answered the complaint by admitting that they had signed the lease agreement described in the complaint and that they had not paid any rent under the lease since July 10, 1968. However, they further alleged as an affirmative defense that they surrendered the leased premises to the Sandens on or about July 1, 1968, and that the surrender of the premises was accepted by the Sandens on or about July 6, 1968, as a result of their beneficial use of the premises.

The district court found that the leased premises had been surrendered by the Hansons and that the Sandens accepted the surrender by using the premises to their benefit since the surrender. Subsequently, the district court entered a judgment that the Sandens' action on the lease should be dismissed. From this adverse judgment the Sandens have appealed.

■ The issue presented by this appeal is whether or not the written lease agreement entered into between the Sandens and the Hansons was terminated on or about July 6, 1968, after the Hansons allegedly surrendered the leased premises and the Sandens allegedly accepted that surrender.

Section 47–16–14, N.D.C.C., provides that:

"When a lease of real property terminates.—The leasing of real property terminates:

.    .    .    .    .    .

"2. By the mutual consent of the parties; . . ."

The mutual consent of the parties required by § 47–16–14 may be express or implied from the conduct of the parties. Thus a lease may be terminated or surrendered either by express agreement or by operation of law, whereby the surrender results from acts of the parties to the lease which imply mutual consent to the termination. Casper Nat. Bank v. Curry, 51 Wyo. 284, 65 P.2d 1116 (1937); Beall v. White, 94 U.S. 382, 24 L.Ed. 173 (1876); 49 Am.Jur. 2d, Landlord and Tenant § 1099.

■ In an action such as we have here to recover rent due under a lease, the defendant must plead the affirmative defense of surrender of the lease by operation of law (49 Am.Jur.2d, Landlord and Tenant § 637) and must prove the elements of that defense. 49 Am.Jur.2d *supra,* § 638. Since the Hansons have properly pleaded the defense of surrender by operation of law, our responsibility on this appeal, where a trial de novo has been demanded, is to determine if the Hansons have proved all the necessary elements of that defense.

The initial element of the affirmative defense of surrender by operation of law which must be proved by the Hansons is that they intended to surrender the leased premises to the Sandens. This requirement has been described by this Court, in Hermon Hanson Oil Syndicate v. Bentz, 77 N.D. 20, 40 N.W.2d 304, 306 (1949):

"Unless it appears either by direct evidence or preponderant circumstances that the lessee intended to abandon his lease, the courts will not declare it terminated on that ground. Intention of the lessee to abandon    .    .    .    [a] lease is a requisite."

■ The only act by the Hansons which may be considered as evidence of their intent to surrender the leased premises occurred on July 1, 1968, when Mrs. Hanson left the keys to the leased premises in the cash register. While this act is not conclusive evidence of an intention to surrender the leased premises, we believe that

its weight is greatly increased by the circumstances under which the keys to the premises were relinquished. The business for which the Hansons had leased the premises had been terminated and the inventory and fixtures which were once owned by the Hansons prior to July 1, 1968, had all been sold to other parties. Thus, on July 1, 1968, the Hansons had no property of their own in the store and no plans for any future use of the premises. Under these circumstances, we find that the act of leaving the keys in the cash register on the leased premises is persuasively indicative of the Hansons' intention to surrender the leased premises.

■ The second element of the defense of surrender and acceptance which the Hansons must prove is the acceptance of the surrender by the Sandens. This acceptance may be implied where the landlord takes possession of the premises and uses them for his own purposes. Anderson v. Andy Darling Pontiac, 257 Wis. 371, 43 N.W.2d 362 (1950); 52 C.J.S. Landlord and Tenant § 493.

The record indicates that the SBA took possession of the fixtures which the Hansons had purchased from the Sandens for $10,000, and sold them to the Sandens in an attempt to recover any money which was still owing on the $15,000 SBA loan. The record further indicates that the fixtures, now owned by the Sandens, have remained on the leased premises since July 1, 1968, the date of their sale to the Sandens.

■■ While we are not bound by the findings of the district court on a trial de novo, they are entitled to appreciable weight. Automobile Club Insurance Co. v. Hoffert, 195 N.W.2d 542 (N.D.1972), and cases cited therein. In light of the use of the leased premises by the Sandens to store their fixtures, we conclude that the district court was correct in finding that the surrender of the leased premises was accepted by the Sandens through their continuing use of the property to their benefit.

Having found that the Hansons have met their burden of proof with respect to the elements of the defense of surrender and acceptance of the lease, we conclude that the district court properly dismissed the Sandens' action for rent due under the lease.

The judgment of the district court in both actions is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.