620 A.2d 894

**Albert E. JENKINS**

**v.**

**John S. KARLTON.**

**No. 53, Sept. Term, 1991.**

Court of Appeals of Maryland.

March 11, 1993.

512

Glenn E. Bushel (Brocato, Price & Bushel, P.A., all on brief), Baltimore, for petitioner.

Stewart P. Hoover, Shapiro and Olander, both on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue presented in this case is whether parol evidence of the parties' intentions, expressed prior to, or contemporaneously with, the execution of a demand note, or the debtor's subsequent acknowledgment of the debt, may vary the terms of that note. The Circuit Court for Baltimore County, finding that neither could, dismissed, as barred by limitations, the action on the note that John S. Karlton ("Karlton") filed against Albert E. Jenkins ("Jenkins") more than three years after its execution. The Court of Special Appeals disagreed. Reversing the trial court, that court held that the case fell within an exception to the general rule that the statute of limitations begins to run on the date that a demand note is executed. *Karlton v. Jenkins*, 86 Md.App. 556, 558, 587 A.2d 580, 581 (1991). We granted Jenkins' petition for certiorari.

I.

Prior to obtaining the loan in question, Jenkins raised money to enable Karlton and Karlton's companies, J.S. Karlton Company, Inc. and J.S. Karlton Management Company, to create limited partnerships. While their business relationship was ongoing, Jenkins informed Karlton of problems he was having with the Internal Revenue Service, occasioned by his inability to pay delinquent taxes. Karlton offered to and, in fact, did, lend Jenkins $15,000. Karlton testified that on February 15, 1985, when he gave Jenkins the money, he told him: "Pay me back when you can. It appears to me that you're going to have a good future with us. You should be able to make money. Pay me back when you can."

Later that day, Karlton sent Jenkins a letter, in which was enclosed a form of promissory note. The letter requested that it be executed and "returned ... by return receipt."

The promissory note, which was in the amount of $15,000 and not under seal, was executed by Jenkins on February 21, 1985. It contained a "due date" of "on demand". In addition to repeating that it was payable on demand, the body of the note provided for "interest prior to maturity at the rate of 10%" and, in the event of default and placement with an attorney for collection, that

the Maker and endorsers agree to pay all costs of collection including reasonable attorneys' fees which shall be added to the amount due under this Note and recoverable with the amount of the same to the holder thereof at maturity and if thereafter any endorser shall place the same with an attorney for collection against Maker, prior endorsers or any of them, then they agree to pay to said endorsers all costs of collection including reasonable attorneys' fees which shall be added to the amount due under this Note and recoverable with the amount of this Note.

Four months later, in a telephone conversation initiated by Jenkins, the parties discussed Jenkins' ability to pay the note. Karlton agreed at that time to give Jenkins a "little time to gather his resources." That forebearance was confirmed in a letter, dated June 14, 1985, from Karlton to Jenkins. Karlton wrote:

We have agreed that even though the note is a demand note, no demand would be made for at least one year from the time that I lent you the money. Therefore, you can be assured that no demand will be made earlier than February 15, 1986, and I would be willing to extend it three months beyond that, which would get you through the tax season, if it will help you.

Karlton first made demand of Jenkins for payment of the note by letter dated July 7, 1988.[1] When the note was not paid, he filed suit on the note on September 26, 1988. By that action, Karlton sought judgment in the amount of $25,000, consisting of the face amount of the note and accrued interest and reasonable attorneys' fees incurred in connection with its collection.

At the end of Karlton's case, Jenkins moved to dismiss the action.[2] He argued that, since it was brought more than three years after the date of the note and the June 14,

---

1. Jenkins responded to Karlton's demand by letter dated July 14, 1988. He denied owing Karlton any money and, indeed, made demand of Karlton "for payment of the commissions, service fees and interest due on [certain] fees and commissions totaling $34,296.56 [which he claimed Karlton owed him]."

2. Although characterized as a motion to dismiss, in truth, it was a motion for judgment pursuant to Maryland Rule 2–519. A motion to dismiss is decided on the pleadings. *See* Maryland Rule 2–322. It requires the court to accept as true all well-pleaded facts and determine whether a claim upon which relief can be granted has been stated. *See Schroyer v. McNeal,* 323 Md. 275, 277 n. 2, 592 A.2d 1119, 1120 n. 2 (1991).

In this case, the court took testimony, which it considered in the light most favorable to the plaintiff. *See* Maryland Rule 2–519(b). The court was not asked to, and the record does not support a conclusion that it did, treat the motion as one for summary judgment. *See* Maryland Rule 2–322(c).

1985 letter did not vary the terms of the note, the action was barred by limitations.

The trial court agreed. Granting the motion for judgment, it reasoned:

If it was anticipated that payment was to begin at a later date, then you can always begin your note payable on such-and-such a date. I can't have you now read into the note reasons for it [not] being made on demand and that payment was to begin on a later date because of that.

The court also concluded that the June 14, 1985 letter did not bring the suit within the exception to the general rule that the statute of limitations on a demand note begins to run on the date of the note.

Reversing the trial court, the intermediate appellate court "examine[d] not only the words of the instrument itself but 'the purpose and circumstances' as well", *Karlton*, 86 Md. App. at 558, 587 A.2d at 581, quoting *Blick v. Cockins*, 131 Md. 625, 630, 102 A. 1022, 1024 (1917), and concluded that the uncontroverted evidence, considered most favorably to Karlton, if believed, was sufficient to prove the applicability of an exception to the general rule. The Court noted, as the relevant circumstances

the extreme financial difficulties of Jenkins at the time, the pressures on him from the Internal Revenue Service, at least an implicit understanding that Jenkins could not repay the loan immediately and thus the "pay me back when you can" words heretofore referred to, which also show the anticipation that the parties would have an enduring and fruitful relationship.... [and] Karlton's letter to Jenkins of June 14, 1985.

*Id.*, 86 Md.App. at 559, 587 A.2d at 581.

## II.

The parties do not disagree as to the effect that the statute of limitations has on a promissory note payable on demand. They agree that, in Maryland, consistent with the general rule, *see* J.A. Bock, Annotation, *When Statute of*

*Limitations Begins To Run Against Notes Payable On Demand,* 71 A.L.R.2d 284 (1957), and cases there cited, it has long been well settled that demand notes are payable immediately, without demand. *Continental Oil Co. v. Horsey,* 177 Md. 383, 385, 9 A.2d 607, 608 (1939); *Blick v. Cockins,* 131 Md. at 630, 102 A. at 1023; *Fells Point Sav. Inst. v. Weedon,* 18 Md. 320, 327 (1862); *Young v. Mayne Realty,* 48 Md.App. 662, 666, 429 A.2d 296, 298 (1981). Consequently, they also agree that, considered in context with Maryland Code (1974, 1989 Repl.Vol., 1992 Cum.Supp.) § 5–101 of the Courts & Judicial Proceedings Article [3], the general three year statute of limitations, unless an action on a demand promissory note was brought within three years of its date or delivery, it is barred. This is so because the statute begins to run when the payment becomes due, *i.e.,* on the date the note is executed. *Weedon,* 18 Md. at 326; *Darnall's Exrs. v. Magruder,* 1 H. & G. 439, 440 (1827).

Karlton concedes that the general rule was codified, with respect to negotiable instruments, when Maryland adopted the Uniform Commercial Code ("U.C.C.") in 1963. *See* Chapter 538, Acts of 1963. That concession is appropriate. Section 1–102(2)(a) and (c) the Maryland Uniform Commercial Code specifies as among the purposes of the enactment: "[t]o simplify, clarify and modernize the law governing commercial transactions" and "[t]o make uniform the law among the various jurisdictions." This Court has observed: "[t]he basic plan of [the Maryland U.C.C.] is to deal with the normal and ordinary aspects of a commercial transaction from start to finish by means of nine subtitles, eight of which are devoted to a specific phase or facet of commercial activity." *Universal C.I.T. Credit Corp. v. Congressional Motors,* 246 Md. 380, 387, 228 A.2d 463, 468 (1967). *See Madison Nat'l Bank v. Newrath,* 261 Md. 321, 338, 275

---

3. That section provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

A.2d 495, 504 (1971) ("the intent and purpose of the Act is to provide comprehensive legislation in a given field [i.e., commercial transactions]"); *In re Automated Bookbinding Serv., Inc.*, 471 F.2d 546, 552 (4th Cir.1972) (the U.C.C.'s purpose is to create a precise guide for commercial transactions under which businessmen may predict with confidence the results of their dealings).

Pertinent provisions of the U.C.C., now codified at Maryland Code (1975, 1992 Repl.Vol.) Commercial Law Article, also demonstrate the appropriateness of that concession. Section 3–104 provides:

(1) Any writing to be a negotiable instrument within this title must

(a) Be signed by the maker or drawer; and

(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this title; and

(c) Be payable on demand or at a definite time; and

(d) Be payable to order or to bearer.

If it is a promise other than a certificate of deposit, the writing is a note. § 3–104(2)(d). Section 3–108 makes clear that a demand note is one that is "payable at sight or on presentation" or "in which no time for payment is stated." A cause of action on a demand note accrues "upon its date, or if no date is stated, on the date of issue." § 3–122(1)(b).

Notwithstanding his concession, Karlton is not persuaded that § 3–122 applies to the note in question. Karlton questions whether one of the provisions of the note has destroyed its negotiability. Aware that allowing for collection fees, including attorneys' fees, does not render the sum payable uncertain, *see* § 3–106, he contends that this note contains promises regarding attorneys' fees on behalf of both the maker and all endorsers of the note, which, he posits, "[appear] to be an additional promise not permitted by Md.Comm.Law Code Ann. §§ 3–104 and 3–112 [pertain-

ing to terms and omissions not affecting negotiability] thus, destroying the negotiability of the note."

Karlton also maintains that resolution of the issue in this case does not depend on application of the U.C.C. at all; rather, he asserts, well settled, pre-U.C.C., principles of Maryland contract law control. In particular, Karlton asserts that the circumstances surrounding the giving of the promissory note stand in stark contrast to, and in contradiction of, the provisions declaring it a demand note. He also argues that his letter of June 14, 1985, confirming their telephone conversation, constituted Jenkins' acknowledgement of the debt.

Jenkins, for his part, denies that he acknowledged the debt within three years of Karlton's filing suit. He argues that this case is controlled by the U.C.C. The code, he maintains, incorporates general contract principles, one of which, that parol or extrinsic evidence may not vary the terms of a clear and unambiguous promissory note, is directly applicable to this case. Because statutes of limitations are not to be given a strained construction so as to avoid their effect, he urges that the note not be construed in light of either parol evidence or extrinsic evidence, *i.e.,* the June 14, 1985 letter.

### III.

We reject Karlton's contention that the U.C.C. is inapplicable to the subject note. When the note was executed, the U.C.C. was in effect and the note is a negotiable instrument to which the U.C.C. certainly has applicability.

Karlton's reservation concerning the note's negotiability is not well-taken. It is premised, as we have seen, on the fact that the note provides for collection fees, including attorneys' fees, not only with regard to the maker of the note, but to all of the endorsers of the note as well. If a promise by the maker of the note to pay collection fees, including attorneys' fees, does not destroy the note's negotiability, we can see no reason why an identical promise by

an endorser, who by endorsing, steps into the shoes of the maker, would do so. Nothing in § 3–104 nor § 3–112[4] mandates a contrary result.

In *Blick v. Cockins,* this Court, while recognizing the general rule that a demand note is due immediately, stated that it is inapplicable "[w]hen a different intention of the parties is apparent from the terms of the instrument or the purpose and circumstances of the transactions." 131 Md. at 630, 102 A. at 1024. We said:

It is clear from the terms of the $2,250 note[5] that the parties intended it to represent a continuing liability

---

**4.** Section 3–112 provides, in pertinent part:
*Terms and omissions not affecting negotiability.*
(1) The negotiability of an instrument is not affected by
(a) The omission of a statement of any consideration or of the place where the instrument is drawn or payable; or
(b) A statement that collateral has been given to secure obligations either on the instrument or otherwise of an obligor on the instrument or in the case of default on those obligations the holder may realize on or dispose of the collateral; or
(c) A promise or power to maintain or protect collateral or to give additional collateral; or
(d) A term authorizing a confession of judgment on the instrument if it is not paid when due; or
(e) A term purporting to waive the benefit of any law intended for the advantage or protection of any obligor; or
(f) A term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer; or
(g) A statement in a draft drawn in a set of parts (§ 3–801) to the effect that the order is effective only if no other part has been honored.
(2) Nothing in this section shall validate any term which is otherwise illegal.

**5.** That note contained the maker's representations and promises as follows:
... having deposited with said James M. Cockins [the plaintiff,] as collateral security for the payment of this note Certificate No. 1109 for 29 shares and Certificate No. 1459 for 40 shares of stock of The National Marine Bank, of Baltimore, Md., with such additional collateral as may, from time to time, be required by said James M. Cockins, which additional collaterals I hereby promise to give at any time on demand. If these additional collaterals be not so given when demanded, then this note to be due; and rebate of interest taken, shall be allowed on payment prior to maturity.

which should mature only upon actual demand of payment, or upon the failure to provide further collateral if required, which it was agreed should have the effect of making the note due and payable.

*Id.* We explained:

In the case before us the terms of the note, which was given for a loan, are wholly inconsistent with the theory that it was intended to become due and payable from the time of its delivery. It provides for the contingency of its maturity occurring at some future period as a result of the maker's failure to furnish additional securities when desired by the payee. It requires a rebate of interest in the event of the payment of the note prior to its maturity. These provisions, and that relating to the substitution of other collateral from time to time by mutual consent, clearly indicate the purpose of the parties that the note should not become due on delivery, but only upon default as to the agreement for additional security, or upon actual demand of payment, which in fact occurred within three years before the institution of the suit. There was consequently no error in the refusal of the prayers which sought to make the statute of limitations a complete bar to the plaintiff's recovery.

*Id.*

Relying on *Blick v. Cockins,* and the cases upon which it relied, *see Weedon,* 18 Md. at 326 (general rule not applied because "the certificate of deposit has attached to it a condition, that the amount deposited is payable *on the return of the certificate:* and the appellant is, in fact, resisting the recovery of the claim upon the ground that this condition is not complied with") and *Mudd v. Harper,* 1 Md. 110, 114 (1852) (acknowledging the general rule but

---

131 Md. at 628–29, 102 A. at 1023. In addition, the note provided that collateral securities might be exchanged for others by mutual consent, in the event of default and without notice and demand for payment, the payee had power of attorney to sell any deposited collateral securities, and any collateral securities would secure any additional liabilities that the maker might incur. *Id.*

discerning nothing in the record to show that it should not apply),[6] Karlton argues, "[t]he uncontroverted evidence of the circumstances surrounding the loan itself demonstrates that the parties never intended for payment to be due immediately." He, like the Court of Special Appeals, perceives those circumstances as being Jenkins' financial plight, from which may be inferred "at least an implicit understanding that Jenkins could not repay the loan imme-

---

**6.** The *Cockins* Court also relied on cases cited at 8 C.J. *Bills and Notes* § 602 (1916). In each of them, determining the intention of the parties was required because the note in question contained language, the literal interpretation of which would have impeded its negotiability and, hence, been incompatible totally with the purpose of the transaction. In *First Nat'l Bank of Waterloo v. Exch. Nat'l Bank of Seneca Falls,* 179 A.D. 22, 153 N.Y.S. 818 (Sup.Ct.1915), the note contained a memorandum stating that "the Bank will not demand payment *until Mr. Bacon is prepared to meet it.*" *Id.,* 153 N.Y.S. at 821 (emphasis added). Rejecting the argument that the emphasized language rendered the note unenforceable, interpreting it "in the light of reason and common sense," the court said:

> The intention of the parties ought to control in a matter of this kind, and if the contention of the trustee in bankruptcy was upheld it would mean that, although that note was a perfectly valid one and given for a sufficient consideration, still the plaintiff could never enforce it, if perchance Mr. Bacon should say that he was not "prepared" to meet it. That memorandum on the back of the note' simply meant that Mr. Bacon should have a reasonable time after it became due in which to make payment, but that when the note became due, if a demand was made (and it has been established that a demand was made of Mr. Bacon), if he neglected to pay it within a reasonable time, the bank could proceed to enforce payment.

*Id.*

To like effect, see *Smithers v. Junker,* 41 F. 101, 101 (N.D.Ill.1889) (note "payable at my convenience, and upon this express condition, that I am· to be the sole judge of such convenience and time of payment" meant within a reasonable time of demand); *Page v. Cook,* 164 Mass. 116, 117, 41 N.E. 115 (1895) (demand note payable "when payor and payee mutually agree" means "payable when and after the payor ought reasonably have agreed"); *Veasey v. Reeves,* 6 Ind. 406 (1855) (where note payable when makers able to pay it, ability of the makers to pay will be inferred from possession of $3000 worth of goods); *McAfee v. Fisher,* 64 Cal. 246, 30 P. 811 (1883) (note payable when "mutually arranged" does not mean that it is payable on demand); *Ramot v. Schotenfels,* 15 Iowa 457 (1863) (note renewed for indefinite period, with monthly interest, and payable "when both parties may agree" is "equivalent to an agreement not to sue for a limited time," it is not a release).

diately," *Karlton,* 86 Md.App. at 559, 587 A.2d at 581, and statements which buttress that implicit understanding.

Karlton also posits that the note's provisions for "interest prior to maturity at the rate of 10%" and for "costs of collection including reasonable attorneys' fees [which] are [to] be added to the amount due under this note and recoverable with the amount of the same to the holder at maturity" are indicative of the parties' intention that the note mature at some future time. Finally, he also points to the June 14, 1985 confirmatory letter as dispelling "any lingering doubt as to the intent of the parties."

■ Karlton's argument based on the circumstances surrounding the loan implicates the parol evidence rule.[7] U.C.C. § 1–103 provides, as relevant:

> Unless displaced by the particular provisions of Titles 1 through 10 of this article, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validatory cause shall supplement its provisions....

Official Comment (1) recognizes "the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act." Its applicability not having been explicitly displaced, the parol evidence rule is relevant to the interpretation of the note at issue.

---

**7.** "The essence of the parol evidence rule is that in the absence of fraud, duress, a mistake ... parol evidence of conversations or alleged oral agreements made before or at the time of the integration of the contract into the writing must be excluded from evidence, inasmuch as a "different rule would increase the temptation to commit perjury and often render instruments of little value." *Foreman v. Melrod,* 257 Md. 435, 441, 263 A.2d 559, 562 (1970) (quoting *Markoff v. Kreiner,* 180 Md. 150, 154–55, 23 A.2d 19, 23 (1941)). The parol evidence rule is a rule of substantive law. *Id.,* 257 Md. at 442, 263 A.2d at 562.

▮▮▮▮▮▮▮▮▮▮▮▮

## A.

The argument that the note is facially ambiguous as to due date, which supports Karlton's contention that the parties intended it to mature at some future time, is similar to the one made, and rejected, in *Harris & Harris v. Tabler*, 232 Va. 75, 348 S.E.2d 241 (1986). In that case, the appellants argued that, when coupled with the absence of a due date, language in the note referencing "a maturity date at some point in the future", *id.* 348 S.E.2d at 243, was an indication that the parties did not contemplate that the note was immediately due, *i.e.*, payable on demand. Citing §§ 3–108 and 3–122 of the U.C.C., the Supreme Court of Virginia, applying the general rule, held that the note was a demand note and that the cause of action accrued on the date of issue, no date being stated. *Id.* Indeed, it characterized the note as a "straight" demand note and upheld the trial court's ruling that parol evidence, which would have taken the note out of the statute of limitations, was properly excluded. *Id.* at 243. Because the statute of limitations had run, however, it also held that the payee on the note could not recover. *See also Dominion Bank, N.A. v. Moore*, 688 F.Supp. 1084, 1086 (W.D.Va.1988); *Brooks v. McCorkle*, 174 Ga.App. 132, 329 S.E.2d 214, 215 (1985); *Davis v. Dennis*, 448 S.W.2d 495, 497–98 (Tex.Civ.App. 1969).

▮▮▮ Moreover, just as neither a provision for interest nor for collection fees, including reasonable attorneys' fees, destroys a note's negotiability, *Mortgage Investors of Washington v. Citizens Bank & Trust Co. of Maryland*, 278 Md. 505, 509–10, 366 A.2d 47, 50 (1976) (recovery of attorneys' fees pursuant to provision in note obligating debtor to pay such fee upon default and entry of valid judgment against debtor might be denied in cases where contemplated services were not rendered or where amount stipulated was not paid to creditor's counsel), *see* § 3–106 of the U.C.C. (providing for interest at a stated rate or for the cost of collection or an attorney's fee or both, upon default, does not make the face amount of the note not a sum

certain), such provisions will not change the character of the note from one payable on demand to one payable at some later time. *Qualified Bldrs. v. Equitable Trust Co.,* 273 Md. 579, 584, 331 A.2d 293, 296 (1975); *Brenner v. Plitt,* 182 Md. 348, 367, 34 A.2d 853, 862 (1943).

 A demand promissory note is, as between the parties to it, a contract, to which the basic rules of contract construction apply. Maryland follows the objective law of contracts. *Gen. Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). *See also Aetna Casualty & Sur. Co. v. Ins. Comm'r,* 293 Md. 409, 420, 445 A.2d 14, 19 (1982). This means that a court construing a contract seeks to determine from its language what a reasonable person in the parties' position would have meant. *Daniels,* 303 Md. at 261, 492 A.2d at 1310. Therefore, "in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract." *Id.* at 261–62, 492 A.2d at 1310, and cases there cited. *See also Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 100, 122 A.2d 563, 568 (1956) ("Where parties have expressed their intention in clear and definite terms the paper must be construed according to the true meaning of the words used there."); *Crothers v. Nat'l Bank,* 158 Md. 587, 595–96, 149 A. 270, 274 (1930) (citations omitted) ("The sound doctrine is that parol testimony is not admissible to change the clear and precise terms of an executed, delivered, and operative written contract which was designed to be the repository and evidence of the final intention of the parties."). Nor may the subjective intent of the maker of the note be considered in the face of objection and unambiguous facts and circumstances to the contrary. *Fithian v. Jamar,* 286 Md. 161, 168, 410 A.2d 569, 573 (1979).

 Karlton brought suit on the promissory note. The only purpose for which the evidence of purpose and circumstances was offered was to prove the parties' intention concerning when the promissory note was payable. On that

point, the note is clear and unambiguous, however. By its terms, Jenkins unconditionally agreed to pay the note, according to its terms, on demand. Consequently, parol evidence was not admissible to inject a condition not apparent on the face of the note.

## B.

■ Karlton's reliance on the confirmatory letter is also misplaced. The U.C.C. recognizes that the parties to a negotiable instrument may, by separate written agreements modify or "affect" that instrument. U.C.C. § 3–119 provides:

(1) As between the obligor and his immediate obligee or another transferee the terms of an instrument may be modified or affected by any other written agreement executed as part of the same transaction, except that a holder in due course is not affected by any limitations of his rights arising out of the separate written agreement when he took the instrument.

(2) A separate agreement does not affect the negotiability of an instrument.

This section, which simply "applies to negotiable instruments the ordinary rule that writings executed as a part of the same transaction are to be read together as a single agreement," Official Comment (3), provides a mechanism to "resolve as to the effect of a separate writing upon a negotiable instrument." U.C.C. § 3–119, Official Comment, Purposes. The confirmatory letter could be a separate writing within the intendment of § 3–119. Whether it is or not for purposes of this case depends upon whether it was "a part of the same transaction" as produced the negotiable instrument, *i.e.*, whether it was intended to modify or otherwise affect the promissory note.

We have not yet defined, for purposes of § 3–119, the phrase, "as a part of the same transaction." In *Foreman v. Melrod*, 257 Md. 435, 445, 263 A.2d 559, 564 (1970), however, we observed that a collateral security agreement,

which had been referred to in the endorsement on the back of a note, to which it related, was "prepared and typed in Mr. Foreman's office as a part of the same transaction." Courts in other jurisdictions have defined the phrase as relating to agreements executed "so proximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or [to] an occurrence within such time as would reasonably make it part of the transaction." *Elsberry Equip. Co. v. Short*, 63 Ill.App.2d 336, 211 N.E.2d 463, 468 (1965). In *Sanden v. Hanson*, 201 N.W.2d 404, 408 (N.D.1972), the court concluded that a Standby Agreement, executed between the purchasers of a business, the sellers, and the Small Business Administration, which was partially financing the purchase, was a part of the same transaction which resulted in the purchasers' execution, more than a month later, of a promissory note in favor of the sellers. 201 N.W.2d at 408. As the court explained:

[T]hey were both executed as part of a plan for financing the sale of the children's clothing store and ... a reading of the provisions of the Standby Agreement indicates that it was intended to limit the right of the Sandens to assert the claim for the $10,000 still owing after September 10, 1965, even if that assertion were to take the form of securing a judgment on a promissory note evidencing the claim.

*Id.* In the former, the note and the written agreements were executed at the same time. 211 N.E.2d at 468.

Like Maryland, other courts have applied § 3–119 without expressly defining the phrase, "as a part of the same transaction." *E.g., Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 71 (5th Cir.1987) (written documents executed with the note are part of the same transaction); *Merchants Nat'l Bank & Trust Co. v. Professional Men's Ass'n, Inc.*, 409 F.2d 600, 601 (5th Cir.1969) (note executed by newly formed corporation within two weeks of its organization and agreement to assume obligations of a predecessor corporation, was a part of the same transaction as the agreement, between the payee and its organizers, pursuant to which it

was organized, even though neither referred to the other); *Geyer v. First Ark. Dev. Fin. Corp.*, 245 Ark. 694, 434 S.W.2d 301, 302 (1968) (note and deed of trust executed together are a part of same transaction); *Reese v. First Mo. Bank & Trust Co.*, 664 S.W.2d 530, 533 (Mo.App.1983) (documents executed at the same time). *See also Merchants Nat'l Bank & Trust Co.*, 409 F.2d at 601; *Hauser v. Western Group Nurseries, Inc.*, 767 F.Supp. 475, 479–80, 490 (S.D.N.Y.1991) (two distinct purchases and sales "inextricably linked as components of an overall transaction"); *Kemmler Mem. Found. v. 691/733 E. Dublin–Granville Rd. Co.*, 62 Ohio St.3d 494, 584 N.E.2d 695, 699 (1992) (agency relationship determined by reading mortgage and other closing documents together).

The cases reveal that the note and the separate written agreement are part of the same transaction even when they have not been executed together, if the transaction cannot be understood without interpreting them together. While documents which are a part of the same transaction may refer to each other, even incorporating terms, *see Geyer*, 434 S.W.2d at 302; *Hauser*, 767 F.Supp. at 490, it is not necessary that they do so. *Reese*, 664 S.W.2d at 533. Nor is proximity of execution a prerequisite; a written agreement that neither refers to the note nor, standing alone, modifies, alters, or affects it, is not a part of the same transaction as that which produced the note, even when the note and agreement are executed at the same time. *Tex. Export Dev. Corp. v. Schleder*, 519 S.W.2d 134, 138 (Tex.Civ.App.1974). *See also McPherson v. the Longview United Pentecostal Church, Inc.*, 540 S.W.2d 424, 432 (Tex.Civ.App.1976).

To be a part of the same transaction, the separate written agreement, whether or not it was executed at the same time, earlier than, or subsequent to the note, must be substantially relevant to understanding the transaction out of which the note arose. Ordinarily, the effect of the written agreement on the note will be obvious from the

terms of the agreement or the circumstances of the transaction. Official Comment (1) states:

> The separate writing is most commonly an agreement creating or providing for a security interest such as a mortgage, chattel mortgage, conditional sale or pledge. It may, however, be any type of contract, including an agreement that upon certain conditions the instrument shall be discharged or is not to be paid, or even an agreement that it is a sham and not to be enforced at all.

But the mere existence of a separate written agreement, arguably affecting or modifying the note, is not sufficient:

> There is still room for construction of the writing as not intended to affect the instrument at all, or as intended to affect it only for a limited purposes such as foreclosure or other realization of collateral. If there is outright contradiction between the two, as where the note is for $1,000 but the accompanying mortgage recites that it is for $2,000, the note may be held to stand on its own feet and not be affected by the contradiction.

Moreover, a written agreement may affect, yet not modify, a note. *See Kemmler Mem. Found.*, 584 N.E.2d at 699; *Hauser*, 767 F.Supp. at 479–80, 490.

The intermediate appellate court viewed Karlton's letter to Jenkins as confirmatory of an earlier implicit understanding of the parties, deduced from the "purposes and circumstances of the [loan] transaction." It concluded, therefore, at the very least, that it affected the note that Jenkins executed. That the letter was written some four months after the note's execution does not render it automatically a separate transaction. The critical inquiry is whether it was intended to and, in fact, did modify the note.

The Karlton letter specifically refers to the February loan transaction, but, although it clearly affects the note—it purports to preclude a demand on the note for at least a year—it does not purport to modify the terms and conditions of the note. Indeed, by agreeing that "even though the note *is* a demand note, no demand would be made for at

least one year from the time that I lent you the money"
(emphasis supplied), it actually confirms that the parties
intended the note to be a demand note. Beyond that, it
merely reflects the acknowledgement that Karlton would
forego making demand on the note for a period of time.
Karlton himself admits as much. Drawing a distinction
between "the circumstances surrounding the transaction"
and the confirmatory letter in his brief, Karlton states,

Not only is it clear from the circumstances surrounding
the transaction that no demand would be made until some
future time (that is, the time of "maturity"), but on June
14, 1985, Karlton wrote to Jenkins and expressly stated
that no demand for repayment would be made earlier
than February 15, 1986, confirming the parties' earlier
implicit understanding.

## IV.

Although the Court of Special Appeals did not address
the issue, Karlton offers an alternative basis on which, he
maintains, the judgment of the intermediate appellate court
may be upheld. *Offutt v. Montgomery County Bd. of
Educ.*, 285 Md. 557, 563 n. 3, 404 A.2d 281, 285 n. 3 (1979)
("An appellate court may, on a direct appeal, affirm a trial
court's decision on any ground adequately shown by the
record, even though not relied on by the trial court or the
parties."). *See also Robeson v. State*, 285 Md. 498, 501–
502, 403 A.2d 1221, 1223 (1979).

Karlton contends that the June 14, 1985 confirmatory
letter constituted Jenkins' acknowledgement of his debt.
Furthermore, he asserts, that acknowledgment was "of an
unconditional promise by Jenkins to pay his pre-existing
debt to Karlton if demand was made after February 15,
1986." Consequently, the argument continues, the statute
of limitations did not begin running until, at the earliest,
February 15, 1986 and, because the action was initiated
within three years of that date, did not bar recovery in this
case.

 The statute of limitations does not extinguish the debt; it bars the remedy only. *Frank v. Warheim,* 179 Md. 59, 65, 16 A.2d 851, 853 (1940). Thus, Maryland law has long recognized that acknowledgement of a debt barred by limitations removes the bar to pursuing the remedy. *Potterton v. Ryland Group, Inc.,* 289 Md. 371, 375, 424 A.2d 761, 763–64 (1981); *James v. Thurn,* 265 Md. 501, 505, 290 A.2d 490, 492 (1972); *Hall v. Barlow,* 260 Md. 327, 337–39, 272 A.2d 386, 391 (1971); *Mettee v. Boone,* 251 Md. 332, 340, 247 A.2d 390, 394–95 (1968); *Brosius Dev. Corp. v. City of Hagerstown,* 237 Md. 374, 380, 206 A.2d 571, 574 (1965); *Doughty v. Bayne,* 222 Md. 361, 364–65 160 A.2d 609, 611 (1960). An acknowledgement, sufficient to remove the bar of limitations, need not expressly admit the debt, it need only be consistent with the existence of the debt. *See Doughty,* 222 Md. at 365, 160 A.2d at 611. Nor must it be an express promise to pay a debt; just as an express promise to pay a debt barred by limitations revives the remedy, "a mere acknowledgement of such a debt will remove the bar of the statute, because if the debtor acknowledges the debt it is implied that he promises to pay." *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 157, 40 A.2d 313, 314 (1944), *see also Nardo v. Favazza,* 206 Md. 122, 128, 110 A.2d 676, 679 (1955). An acknowledgement of a debt can occur prior to the running of limitations, *see Potterton v. Ryland Group, Inc.,* 289 Md. at 378, 424 A.2d at 764, in which event, rather than removing the bar of limitations, it both tolls the running of limitations and establishes the date of the acknowledgment as the date from which the statute will now run. *Id.*

Recognizing that the demand, made by letter dated July 7, 1988, came more than three years after his June 14, 1985 letter and that suit was filed even later, Karlton proposes a new wrinkle be added to the acknowledgement rule. He insists:

The June 14, 1985 letter, viewed in a light most favorable to Karlton, was a confirmation of an acknowledgment by Jenkins of his debt to Karlton. Moreover, the letter is

confirmation of an unconditional promise by Jenkins to pay his existing debt to Karlton if demand was made after February 15, 1986. (footnote omitted).

Underlying these assertions is the assumption that Jenkins' obligation *under the original note* was acknowledged, conditioned on demand not being made until after February 15, 1986. But Karlton brought suit on the original promissory note; he did not sue on any alleged subsequent contract or agreement.[8] Therefore, accepting Karlton's June 14, 1985 letter as evidence of Jenkins' acknowledgement of his debt, the statute ran from June 14, 1985 to June 14, 1988. Demand having been made by letter dated July 7, 1988, suit was not filed until September 1988. Both came too late.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

---

**8.** Karlton could have argued, but did not, that the confirmatory letter memorialized a new agreement between the parties which replaced or substituted for the old one embodied in the note, *i.e.*, a novation. *See I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7–8, 344 A.2d 65, 70 (1975); *Dahl v. Brunswick Corp.*, 277 Md. 471, 481, 356 A.2d 221, 227 (1976). Nor did Karlton argue that the confirmatory letter evidenced a subsequent agreement that modified, effective between maker and original holder, the terms of the note by deleting the provision for payment on demand and substituting February 15, 1986, as a definite time for payment, subject to extension at the option of the holder. *See* U.C.C. § 3–109(1)(d). Hence, we express no opinion on when the statute of limitations would begin to run under those circumstances.