797 A.2d 118

**Leif W. HANSEN**

v.

**Richard D. LARSEN, et al.**

**No. 553, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 2, 2002.

John C. Keating, Rockville, for appellant.

Michael L. Rowan (Quinn, McAuliffe & Rowan, on brief) Rockville, for appellees.

Argued before DEBORAH S. EYLER, PAUL E. ALPERT, (Ret., specially assigned), JOHN F. McAULIFFE, (Ret., specially assigned), JJ.

ALPERT, J.

In this appeal, Leif W. Hansen, the appellant, seeks to revive his claim against appellee Richard D. Larsen for breach of a promissory note. Hansen sued Larsen in the Circuit Court for Montgomery County and both parties moved for summary judgment. The court granted Larsen's motion and entered summary judgment in Larsen's favor on the ground that the claim was barred by limitations.

## ISSUES

Hansen argues, in essence, that:

The trial court erred in ruling that the claim was barred by limitations where:

I. There was a genuine dispute as to whether Larsen was "absent from the State when [the] cause of action accrue[d] against him" and thus "may not benefit from the statute of limitations," and

II. Even if the statute of limitations did run, there was a genuine dispute as to whether Larsen acknowledged the debt and thereby removed the bar of the statute.

We find no merit in either of these arguments and shall affirm the judgment of the trial court.

## STANDARD OF REVIEW

"Any party may file at any time a motion for summary judgment ... on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2–501(a). In responding to a motion for summary judgment, the opposing party "shall identify with particularity the material facts that

are disputed." Md. Rule 2–501(b). "[W]hen the moving party has set forth sufficient grounds for summary judgment, the opposing party must show with some precision that there is a genuine dispute as to a material fact." *King v. Bankerd,* 303 Md. 98, 112, 492 A.2d 608 (1985). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* at 111, 492 A.2d 608.

"The function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but to determine whether there is a dispute as to a material fact sufficient to provide an issue to be tried." *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170, 171 (1980). Significantly, "[a]ll inferences must be resolved against the moving party when a determination is made as to whether a factual dispute exists." *Id.* at 304–05, 413 A.2d at 171.

> On a motion for summary judgment, the evidence, including all inferences therefrom, is viewed in the light most favorable to the nonmoving party.... If the facts presented to the trial court on a motion for summary judgment are susceptible to more than one inference, the inference must be drawn in the light most favorable to the person against whom the motion is made, and in the light least favorable to the movant.

*Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 676, 766 A.2d 617 (2001) (citations omitted).

The trial court "shall enter summary judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). "[U]nder Maryland's summary judgment rule[,] a trial court determines issues of law; it makes rulings as a matter of law, resolving no disputed issues of fact.... In this regard, the standard for appellate review of a trial court's grant of a motion for summary judgment is simply whether the trial court was legally correct." *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993) (citation omitted).

## FACTS

Hansen filed one affidavit in support of his motion for summary judgment, and a second affidavit in support of his response to Larsen's motion for summary judgment. Larsen filed one affidavit in support of his motion for summary judgment and specified that the affidavit was also filed to supplement his response to Hansen's motion. The various affidavits set forth the following relevant, undisputed facts.

Hansen and Larsen are distantly related. Hansen is the cousin of one Grethe Larsen, now deceased, and Larsen is Grethe Larsen's stepson. Hansen resides in Potomac, Maryland. Larsen lived in Richmond, Virginia until some point in 1988, when he moved to Wake Forest, North Carolina.

In February of 1983, Hansen loaned Larsen $40,000.00 to be used for a business, Type Time Boardwalk, which Larsen owned and operated in Richmond. Larsen executed a promissory note, by which he agreed to repay the loan at such time as the business was sold.

Larsen sold Type Time Boardwalk in 1986. At some point between the time of the sale and September of 1987, Larsen informed Hansen that he had collected no money from the sale and would be unable to repay the loan.[1] In 1988, Larsen moved from Virginia to North Carolina.[2]

---

1. Hansen asserted in his affidavit in support of his motion for summary judgment that he learned of the sale of the business in September of 1987, confronted Larsen immediately, and demanded payment. Hansen stated that Larsen responded by sending him a letter in which he asserted that he could not repay the loan. Larsen asserted in his affidavit that Hansen was informed of the sale as soon as it took place in 1986 and was also aware at that time that Larsen had not collected any proceeds from the sale. According to Larsen, Hansen asked for the aforementioned letter and explained that he wanted something in writing "so he could take the loan as a loss on his income tax." While the affidavits reflect a genuine dispute as to when Hansen learned of the sale, and thus when the cause of action arose, we do not believe, and the parties do not argue, that the dispute is material to the resolution of the case.

2. Hansen states in the affidavit in support of his motion that when Larsen moved from Richmond he left no forwarding address and that

Grethe Larsen died in September of 2000 and left a portion of her estate to Larsen. On December 8, 2000, Hansen filed suit against Larsen.[3] Both parties moved for summary judgment. The trial court agreed with Larsen's assertion, in his motion, that the suit was barred by the applicable statute of limitations. It entered summary judgment in Larsen's favor.

## DISCUSSION

Hansen argues that, for two reasons, the trial court erred in determining that the suit was barred by limitations. Hansen first contends that Larsen is barred from relying on the statute of limitations because he was absent from the state when the cause of action accrued. Next, Hansen argues that even if Larsen is not barred from relying on the statute, Larsen acknowledged the debt to Grethe Larsen and thus revived the debt.

Preliminarily, we point out that, because the action is based on a promissory note, the limitations period was twelve years as set forth in Md.Code (1974, 1995 Repl.Vol.), § 5–102(a)(1) of the Cts. & Jud. Proc. Art. Hansen alleges that he learned of the sale of Type Time Boardwalk in September of 1987. He filed suit against Larsen thirteen years and three months later.

### —Absence from State—

Section 5–205 of the Courts Article provides:

(a) *Denial of benefit of limitation.*—A person who absents himself from the State or removes from county to

---

subsequent attempts by Hansen to locate Larsen were unsuccessful. In the affidavit in support of his response to Larsen's motion, Hansen elaborates that he never asked any of his relatives for Larsen's address because it was "a private matter...."

3. Hansen also named as a defendant the personal representative of Grethe Larsen's estate. The personal representative was never served with process and never entered an appearance in the case. After summary judgment was entered in Larsen's favor, Hansen and Larsen stipulated to the dismissal with prejudice of the personal representative from the case.

county after contracting a debt, so that his creditor may be uncertain of finding the person or his property, may not have the benefit of any limitation contained in this title, but this subsection does not prohibit a person from removing himself or his family from one county to another for reasons of convenience nor does it deprive any person leaving the State for the time limited in this subsection of the benefits of any statute of limitations if he leaves sufficient and known effects of the payment of his just debts in the hands of some person who will assume the payment of them to his creditors.

(b) *Person absent when action accrues.*—A person who is absent from the State when a cause of action accrues against him may not benefit from a statute of limitation if the plaintiff files the action within the normal limitations period after the defendant returns to the State.

Code (1974, 1995 Repl.Vol.), § 5–205 of the Cts. & Jud. Proc. Art.

Hansen argues that § 5–205 is applicable to the instant case and that the statute of limitations is therefore not a bar to his suit against Larsen. Hansen suggests that Larsen "absent[ed] himself from the State" within the meaning of subsection (a) of the statute, in that he left Hansen "no forwarding address" and thus "concealed his residence for the purpose of frustrating any attempt by [Hansen] to collect the debt." Hansen also suggests that, in any event, because Larsen was not a resident of Maryland, he was "absent from the State" within the meaning of subsection (b), and the limitations period did not begin until he "return[ed] to the State." Hansen's arguments are utterly without merit.

As to § 5–205(a), Hansen offered no evidence, either in support of his own motion for summary judgment or in response to Larsen's motion, that Larsen attempted to conceal his whereabouts from Hansen. Hansen stated in the affidavit filed with his motion that, when Larsen moved, he did not provide Hansen with a forwarding address. Hansen asserted

that he "attempted to locate . . . Larsen without success," but did not elaborate on his attempts.

Larsen asserted in the affidavit filed with his motion for summary judgment that, after his move to North Carolina, he "continued to send letters and holiday cards to [Hansen] and his family and [his] return address was on those cards." Larsen further asserted that "Hansen's daughter has visited us in our home in North Carolina and my son had attended family functions with Mr. Hansen and his family." Although Hansen disputed, in his second affidavit, that he personally received cards or letters from Larsen, he indicated only that he was "unaware" whether his daughter ever visited Larsen in North Carolina. Hansen did not dispute that he had attended family functions with Larsen's son.

Hansen stated in his second affidavit that he "always kept the matter of the debt[,] and the collection thereof, a private matter between [himself] and [Larsen] and did not involve other relatives with any attempts to collect the same." He added that he "has maintained a policy, in support of family unity, to refrain from the mention of the debt to any other relatives common to each party." While this policy may well have been a commendable one, it does not explain why Hansen failed to ask any of the relatives he had in common with Larsen for Larsen's address. There is no indication that, if Hansen had simply asked for the address, it would not have been forthcoming.

■ Contrary to Hansen's understanding as to § 5–205(b), a person is not "absent from the State" merely because he or she does not reside in Maryland. It has long been established that a person will be deemed absent from the State, for limitations purposes, only if he or she cannot be "reached by the process of the Court." *Mason, Chapin and Co. v. Union Mills Mfg. Co.*, 81 Md. 446, 458, 32 A. 311 (1895) (interpreting former Code (1860), § 5 of Art. 57, the predecessor to § 5–205 of the Courts Article). "In other words, if jurisdiction over a defendant may be had under the long arm statute, the defendant is not absent from the state within the meaning of the

statute that tolls the running of a statute of limitations." 51 Am.Jur.2d *Limitation of Actions* § 204 at 582 (2000).

> If he can be reached by process, it matters not whether he be resident or not, for in either case he will be protected by the statute, unless his creditor sues him within the time limited—and this without regard to whether the creditor be present or absent from this State. And, on the other hand, if the debtor cannot be reached by process, he is ... "Absent out of the State." And therefore, although a defendant may be actually within the territorial limits of the State, if he is beyond the reach of process, he is, within the meaning of the statute, "out of the State."

*Mason, Chapin and Co.,* 81 Md.App. at 458, 568 A.2d 844. *See also Maurice v. Worden,* 52 Md. 283, 290, 292 (1879) (holding that the statute of limitations was not tolled when the cause of action accrued against the defendant although the defendant was, at the time, located in "the territory ceded to the United States by the State of Maryland," and explaining that, for purposes of former § 5 of Art. 57, "[o]ut of the State" meant "beyond the reach of process"); *Jolivet v. Elkins,* 386 F.Supp. 261, 272 (D.Md.1974) (interpreting former § 5 of Art. 57 and holding, in a suit brought by a former law student against a number of persons associated with his law school including two professors who had moved out of State, that the statute of limitations was not tolled as to the two professors because, *inter alia,* "the term 'out of the State' in § 5 as applied in this case would mean beyond the reach of the Court's process," and neither professor was beyond reach of Maryland's long arm statute). *See generally* Kenneth J. Rampino, Annotation, *Tolling of Statute of Limitations During Absence from State as Affected by Fact that Party Claiming Benefit of Limitations Remained Subject to Service During Absence or Nonresidence,* 55 A.L.R.3d 1158 (1974, 2001 Supp.); G.H. Fisher, Annotation, *Provision of Statute of Limitations Excluding Period of Defendant's Absence from the State as Applicable to a Local Cause of Action Against Individual Who Was a Nonresident When the Same Arose,* 17 A.L.R.2d 502 (1951, 2001 Supp.). *Cf.* Code (1974, 1995 Repl. Vol.), § 5–201 of the Cts. & Jud. Proc. Art. (addressing

disabilities that prevent statutes of limitations from barring plaintiffs from bringing suit, and establishing, in subsection (c), that "[i]mprisonment, absence from the State, or marriage are not disabilities which extend the statute of limitations").

 Although Larsen did not reside in Maryland during any portion of the relevant period and does not reside in Maryland now, there is no dispute that he was always reachable by process. Thus, he was never "absent from the State" within the meaning of § 5–205. In his complaint, Hansen alleged that the Circuit Court for Montgomery County had personal jurisdiction over Larsen under Code (1974, 1995 Repl.Vol.), § 6–103(b)(1) of the Cts. & Jud. Proc. Art., in that he transacted business in Maryland.[4] Section 6–304 of the Courts Article provides: "If the exercise of personal jurisdiction is authorized by this title, the defendant may be served with process where he is found, whether within or outside of the State." *Id.*, § 6–304.

The complaint could have been filed and Larsen could have been served with process at any time after the cause of action arose. The record contains no valid explanation for the delay of thirteen years and three months from the date that Hansen allegedly learned of the sale of Type Time Boardwalk. It is nonsensical to suppose that, where a defendant is subject to the personal jurisdiction of a court and is within reach of the court's process, a plaintiff may refrain from taking action against the defendant until after the limitations period would normally expire simply because the defendant resides in another State.[5]

#### —Acknowledgment of Debt—

 Hansen asserted in his affidavit in support of his motion for summary judgment that he learned in September

---

4. Although the record is not clear as to the matter, we presume that Hansen meant that the agreement was executed in this State.

5. Nothing in the record reflects where Larsen was located when he was served with process, although there is some indication that personal service was obtained. It may well be that Larsen was served in Wake Forest, North Carolina, where he resides.

of 2000 that Grethe Larsen was "very ill and likely to die." He further alleged that, during "prior visits," Grethe Larsen had informed him that Larsen had "acknowledged the existence of the debt and stated that he intended to pay it when able. . . ." In his second affidavit, Hansen asserted that Grethe Larsen had informed him that Larsen had "numerous times mentioned his debt to her, stating that he intended to pay if and when he was able."

Hansen now argues that Larsen's acknowledgment of the debt would remove the bar of the statute of limitations. As the Court of Appeals has summarized:

> The statute of limitations does not extinguish the debt; it bars the remedy only. . . . Thus, Maryland law has long recognized that acknowledgement of a debt barred by limitations removes the bar to pursuing the remedy. . . . An acknowledgement, sufficient to remove the bar of limitations, need not expressly admit the debt, it need only be consistent with the existence of the debt. . . . Nor must it be an express promise to pay a debt; just as an express promise to pay a debt barred by limitations revives the remedy, "a mere acknowledgement of such a debt will remove the bar of the statute, because if the debtor acknowledges the debt it is implied that he promises to pay."
> . . . An acknowledgement can occur prior to the running of limitations, . . . in which event, rather than removing the bar of limitations, it both tolls the running of limitations and establishes the date of the acknowledgement as the date from which the statute will now run. . . .

*Jenkins v. Karlton,* 329 Md. 510, 531, 620 A.2d 894 (1993) (citations omitted).

In determining that Hansen's claim was barred by the statute of limitations, the trial court implicitly determined that Hansen had not properly generated a question as to whether the debt had been revived. Hansen now argues that the trial court erred.

The parties devote large portions of their briefs to discussions of whether the statements allegedly made by Larsen to

Grethe Larsen were inadmissible hearsay. Assuming, without deciding, that the statements were admissible, the trial court nevertheless correctly determined that Hansen had failed to present evidence that the debt had been revived.

As we have indicated, the record reflects that the loan was made in February of 1983. The twelve-year limitation period began running, at the latest, in September of 1987, when Hansen alleges he learned of the sale of Type Time Boardwalk. Hansen filed suit against Larsen on December 8, 2000. Because an acknowledgment by Larsen would have "toll[ed] the running of limitations and establishe[d] the date of the acknowledgement as the date from which the statute will now run," *id.* at 531, 620 A.2d 894, the acknowledgment would have to have taken place on or after December 8, 1988 in order for Hansen's complaint to have been timely filed.

Hansen failed to specify in either of his affidavits precisely when Grethe Larsen told him about the acknowledgments or precisely when the acknowledgments were allegedly made. If Larsen's last acknowledgment of the debt was made between February of 1983 and December 7, 1988, the statute of limitations would have expired prior to December 8, 2000. Absent a specific averment that Larsen acknowledged the debt during the twelve years immediately prior to the filing of the complaint, the trial court properly concluded that the statute of limitations barred the action.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**